940 F.2d 1317
 21 Bankr.Ct.Dec. 1652, Bankr. L. Rep. P 74,113
 In re Morton REED, Debtor.
Steven A. SCHWABER, Trustee, Plaintiff-Appellee,
v.
Morton REED, Defendant-Appellant,
and
Safi Reed; Joseph T. Vodnoy, et al., Defendants.
In re Morton REED, Debtor.
Steven A. SCHWABER, Trustee, Plaintiff-Appellee,
v.
Safi REED, Defendant-Appellant,
and
Morton Reed; Joseph T. Vodnoy, et al., Defendants.
 Nos. 89-55488, 89-55491.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 9, 1991.
Decided Aug. 9, 1991.
 
 Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, Cal., for defendant-appellant Morton Reed.
 Richard K. Diamond, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for defendant-appellant Safi Reed.
 Stanley E. Goldich, Catherine A. Steiner, Pachulski, Stang & Ziehl, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before REINHARDT and FERNANDEZ, Circuit Judges, and SMITH, District Judge.*
 FERNANDEZ, Circuit Judge:
 
 
 1
 Morton Reed ("Debtor") and his wife, Safi Reed, appeal the district court's order affirming the bankruptcy court's preliminary injunction. The injunction orders the Debtor to turn over his portion of the net proceeds from the sale of the Reeds' home to the bankruptcy trustee, appellee Steven A. Schwaber ("the Trustee").[1] We affirm.
 
 BACKGROUND
 
 2
 On September 12, 1986, Debtor filed a voluntary petition in bankruptcy for Chapter 7 relief. He listed among his assets a one-half interest in his home in Beverly Hills ("residence"), which he held in joint tenancy with his wife, Safi Reed. Debtor also claimed a $45,000 homestead exemption in the residence under California law. Debtor swore the value of his one-half interest was $300,000, and that a secured debt of $380,000 encumbered the residence.
 
 
 3
 The Trustee filed a pre-printed "No Asset" report form on August 7, 1987, thereby stating that any assets were encumbered beyond value or otherwise negligible, and that the listed assets were to be abandoned in accordance with 11 U.S.C. Sec. 554(c), that is, when the estate was closed. The bottom of the pre-printed form contains a proposed order closing the case and a place for the bankruptcy clerk's signature. No signature, by stamp or otherwise, was ever placed on the order, and the order was never entered.
 
 
 4
 The Reeds then entered into an escrow to sell their residence. During escrow they discovered that Robert Humiston, in violation of 11 U.S.C. Sec. 362(a), had filed a judgment lien on the residence after the filing of the bankruptcy petition. At a hearing on Debtor's request to vacate the lien, the bankruptcy judge ordered the Trustee to appear. On August 21, 1987, the Trustee appeared and stated that he intended to withdraw the "No Asset" report based on his new belief that the home was held as community property rather than joint tenancy and was therefore a valuable asset in Debtor's estate.
 
 
 5
 As a result of the various hearings, the Humiston lien was withdrawn, the "No Asset" report was ordered withdrawn, and Debtor's counsel was admonished repeatedly that the Reeds were not to sell their residence or alter its title in any way. In spite of this, on November 6, 1987, the Reeds entered into another agreement to sell their residence. The Trustee withdrew his "No Asset" report on December 7, 1987. Escrow on the sale of the residence closed on December 15, 1987.
 
 
 6
 The Trustee learned of the sale in February of 1988 and filed this action for a preliminary injunction to require Debtor to turn over his share of the net proceeds and for an accounting of the proceeds. The bankruptcy court granted the injunction, 89 B.R. 100, and the district court affirmed. The Reeds now appeal.
 
 JURISDICTION AND STANDARDS OF REVIEW
 
 7
 We have jurisdiction pursuant to 28 U.S.C. Sec. 158(d).
 
 
 8
 We independently review the bankruptcy court's decision. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). We reverse a decision granting a preliminary injunction "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir.1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).
 
 DISCUSSION
 
 9
 The issues on this appeal all concern the merits of the preliminary injunction. The parties do not dispute that the Trustee would suffer irreparable injury if the injunction were not granted.
 
 A. Homestead Exemption
 
 10
 Under California law at the time when Debtor claimed his homestead exemption, once a Debtor is allowed the exemption a property right to $45,000 of the proceeds from the sale of the Debtor's residence revests in the Debtor and is no longer part of the bankruptcy estate. Cal.Civ.Proc.Code Secs. 704.720, 704.730.[2] There is no support for Debtor's argument that title to the entire residence automatically revests in the Debtor.
 
 
 11
 California does not permit a debtor to exempt his entire interest in a homestead, but specifically limits the dollar amount up to which a homestead exemption can be claimed. Cal.Civ.Proc.Code Sec. 704.730(a). The language of the relevant statutes makes it clear that the "homestead exemption" in California is merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a money judgment; it is not an absolute right to retain the homestead itself. See, e.g., Cal.Civ.Proc.Code Sec. 704.720(b), which states, "If a homestead is sold under this division ... the proceeds of sale ... are exempt in the amount of the homestead exemption provided in Section 704.730." (Emphasis added). See In re Hyman, 123 B.R. 342, 345-48 (9th Cir.BAP 1991).
 
 
 12
 In this case, no one objected to Debtor's homestead exemption within thirty days of the creditors' meeting. Therefore a right to $45,000 of any net proceeds from sale of the residence passed out of the bankruptcy estate on November 29, 1986. See Bankruptcy Court Rule 4003(b). However, the residence itself and all remaining net proceeds were still part of the bankruptcy estate and subject to administration by the Trustee.[3]
 
 B. The "No Asset" Report
 
 13
 Although filing a "No Asset" report may exhibit the requisite intent to abandon an asset, that report in and of itself cannot result in abandonment unless the court closes the case. Behrens v. Woodhaven Ass'n, 87 B.R. 971, 973 n. 1 (Bankr.N.D.Ill.1988); In re Dlugopolski, 67 B.R. 122, 124 (Bankr.D.Kan.1986) (no abandonment by operation of law because case had not been closed); 11 U.S.C. Sec. 554 (identifying three ways in which a trustee can abandon property, all of which require court action).
 
 
 14
 In this matter, the bankruptcy court found that the case was never closed by the court before the Reeds sold their home, and that factual finding is not clearly erroneous. See 11 U.S.C. Sec. 554(c). It is also undisputed that there was no notice and hearing before the trustee filed the "No Asset" report. See 11 U.S.C. Sec. 554(a), (b). Thus, there was no court action and no abandonment.[4]
 
 
 15
 The policy statements in In re Hunter, 76 B.R. 117 (Bankr.S.D.Ohio 1987), would not change this result, even if we accepted them. The court in Hunter stated that the courts and the parties should be able to rely on a trustee's filing of a "No Asset" report without having to wonder whether the trustee will second guess himself.[5] Id. at 119. In the present case, there was no reliance. On the contrary, before the Reeds proceeded to sell their home, the bankruptcy judge stated, "I'm giving [them] warning, that the trustee is intending to administer this property. Your client can't sell it, okay." At any rate, it does not ask too much of parties or courts if they must wait until the order closing the estate is actually made. That is no more than the law expressly requires. To the extent that Hunter would ignore the law for the sake of administrative convenience, we decline to follow it.
 
 C. Debtor's Interest in the Residence
 
 16
 State law determines the existence and scope of a debtor's interest in property. Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979). That interest is determined upon filing the bankruptcy petition and becomes part of the bankruptcy estate at that time. 11 U.S.C. Sec. 541(a).
 
 
 17
 Under California law, only a Debtor's one-half joint tenancy interest[6] can be sold to satisfy a money judgment. Cal.Civ.Proc.Code Sec. 704.820. In order to actually transfer that interest free and clear of liens, the law provides that it cannot be sold by a creditor unless the proceeds from the sale would exceed the sum of the homestead exemption and the full value of any jointly given mortgage encumbrance on the property. Schoenfeld v. Norberg, 11 Cal.App.3d 755, 766, 90 Cal.Rptr. 47 (1970).
 
 
 18
 Cases interpreting Schoenfeld have strictly adhered to its mandate that, when calculating a Debtor's equity in a joint-tenancy interest for creditor sale purposes, one must subtract the full value of the outstanding liens and encumbrances and the homestead exemption from the Debtor's one-half interest in the fair market value. If the resulting number is negative, there can be no forced sale by a creditor. See In re Jacobs, 48 B.R. 570, 573 (Bankr.S.D.Cal.1985) (finding no equity in debtor's one-half interest, which was less than outstanding first deed of trust where a creditor brought the action); In re Miles, 35 B.R. 52, 54 (Bankr.E.D.Cal.1983) (in a creditor's action, following the Schoenfeld formula to determine whether there is any equity for the debtor's estate, or whether a creditor can force a sale of the property); In re Schneider, 9 B.R. 488, 490 (N.D.Cal.1981) (stating the interest subject to sale must exceed value of homestead exemption before that interest can be sold and finding no contention that joint encumbrances are to be deducted solely from debtor's interest).[7]
 
 
 19
 Debtor argues that under Schoenfeld and its progeny, the bankruptcy estate had no interest in the residence at the commencement of the case because the value of Debtor's one-half interest less the full value of encumbrances and the homestead exemption would be a negative number. Debtor's argument is flawed. In bankruptcy a trustee can sell the entire property rather than just the joint-tenant's interest, provided certain conditions are met. 11 U.S.C. Sec. 363(h).[8] Schoenfeld itself makes it clear that there is no problem and its formula need not be applied when the property is subject to sale in its entirety. Schoenfeld, 11 Cal.App.3d at 762, 90 Cal.Rptr. 47. Thus, while Schoenfeld was concerned with determining whether a sale by a creditor can take place, the present case is concerned with determining whether there is any value in a Debtor's interest in property.
 
 
 20
 We hold that there is value if the Debtor's one-half interest in the net proceeds from sale of the entire residence exceeds the value of Debtor's homestead exemption. In this case it did. Therefore, the district court was correct in stating that the bankruptcy estate had an interest in one-half of the net proceeds of the sale less Debtor's homestead exemption. Since it is probable that the trustee could have sold the property in its entirety, it is sensible to divide the proceeds as if he had done so.
 
 
 21
 To hold that there is no value to a Debtor's interest in an asset unless that interest exceeds the full value of all outstanding encumbrances and the homestead exemption would also ignore the final mandate of Schoenfeld. The court stated that if a one-half interest in property were sold and the entire encumbrance paid from it, the purchaser would be entitled to contribution from the remaining cotenants for their fair share of the encumbrance. Schoenfeld, 11 Cal.App.3d at 766, 90 Cal.Rptr. 47. This also makes it clear that Schoenfeld is a case about powers of sale rather than a case about valuation.[9] See also In re Paderewski, 564 F.2d 1353, 1360 (9th Cir.1977) (taking outstanding encumbrances and cost of sale off the top of the proceeds from the sale and dividing net proceeds equally between the parties).
 
 D. Appreciation
 
 22
 The bankruptcy code states that a bankruptcy estate is comprised of:
 
 
 23
 Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
 
 
 24
 11 U.S.C. Sec. 541(a)(6).
 
 
 25
 We interpret this language to mean that appreciation enures to the bankruptcy estate, not the debtor. See In re Hyman, 123 B.R. at 346-48; In re Prospero, 107 B.R. 732, 736 (Bankr.C.D.Cal.1989); In re Paolella, 85 B.R. 974, 977 (Bankr.E.D.Pa.1988). No doubt Debtor's argument that appreciation enured to him would have merit if his entire interest in the residence had been set aside or abandoned to him; it was not.
 
 E. Laches
 
 26
 The Reeds did not close the sale of their home until December 15, 1986, which was after the trustee withdrew the "No Asset" report.[10] The bankruptcy court found that the Trustee did not learn of the sale until February of 1988. He filed the complaint on April 1, 1988, not even two months later. The bankruptcy court did not abuse its discretion in finding the Trustee's claim was not barred by laches.
 
 F. Sanctions
 
 27
 We may award sanctions under Fed.R.App.P. 38 if we determine that an appeal is frivolous. "An appeal is frivolous in this circuit when the result is obvious, or the arguments of error are wholly without merit." Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 527 (9th Cir.1989) (citations omitted). This appeal concerns complicated issues of bankruptcy law and the interrelations between bankruptcy law and state law. It is not frivolous. We decline to award sanctions against appellants.
 
 CONCLUSION
 
 28
 Debtor sought to discharge his debts in bankruptcy. He, however, had a very valuable asset which he sought to keep. Acceptance of his argument that he can do so would require us to take a rather lackadaisical view of bankruptcy law and procedures. We decline.
 
 
 29
 The simple fact is that Debtor's interest in his home remained in the bankruptcy estate until he and his wife contrived to sell it, and thus convert it into cash. Now they must account for the Debtor's interest in that cash.[11]
 
 
 30
 In reaching our conclusion we need not describe the Debtor's behavior as picaresque or worse. We need only point out that the result is both fair and compelled by the bankruptcy law.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 David Seror has since been appointed as successor trustee, and has become the successor to Schwaber's interest in this appeal
 
 
 [2]
 Under the 1990 amendments to section 704.730, Debtor's exemption would be $75,000
 
 
 [3]
 Debtor argues that he did not merely claim a $45,000 exemption on his asset schedule, but that he claimed an exemption of his entire one-half joint tenancy interest as his exemption. We have reviewed Debtor's bankruptcy petition, "Schedule B-4--Property claimed as exempt," and find this assertion to be erroneous. The first item listed is "Homestead," and the value claimed exempt is $45,000. Although Debtor is correct in stating that California defines "Homestead" as the principal dwelling, California does not define "homestead exemption" in the same way. Had Debtor claimed exemption of the whole property because of the effect of calculations provided by California law, as set out in Section C of this opinion, we would be dealing with a different case. Of course, others reviewing the schedule would have had the same information, and could have acted to protect themselves
 
 
 [4]
 The briefing and argument in this case suggest that there is some confusion at the bankruptcy court regarding the closing of cases. We are told that the clerk has been delegated the authority to close cases, but that the clerk only does so when it is deemed that a reasonable time has passed without case activity. We have not been referred to and have not been able to find any formal delegation document. It is also suggested that the closing of a case is ministerial at times. In a 1987 case, one bankruptcy judge from the Central District noted that a final decree was necessary for closing cases but that the closing itself was an essentially ministerial act delegated to the clerk's office in no asset cases. See In re Hart, 76 B.R. 774, 776 (Bankr.C.D.Cal.1987). On the other hand, in this matter it is quite clear that the bankruptcy judges did not consider the case to be closed at all, and the parties did not consistently behave as if it were. We mention the issue because, as this case shows, very important rights can turn on whether a case is closed. Thus, it would be most helpful to all concerned if the intended policy and procedure of the bankruptcy court were clarified
 
 
 [5]
 Anent the immediately preceding footnote, Hunter said that, at least in the Southern District of Ohio, the filing of a no asset report does not close a bankruptcy case. Id. at 118
 
 
 [6]
 The bankruptcy court found that Debtor's interest was in fact joint tenancy rather than community property, and this finding is not clearly erroneous
 
 
 [7]
 If Schneider held that a trustee has no interest in the property unless the Schoenfeld formula is met, we would not accept that reasoning. Schoenfeld is a case about creditors' powers under California law, not about a trustee's powers under bankruptcy law
 
 
 [8]
 While the bankruptcy court did not specifically say that the requirements of section 363(h) were fulfilled, it appears likely that they were. Since this was a residence, partition in kind was obviously not possible. Section 363(h)(1). The estate's interest would be much less if both halves could not be sold--it could be zero. Section 363(h)(2). The benefit to the estate far exceeded the detriment to the other co-owner, for the other would get full value for her interest, which she wanted to sell anyway, and the estate would get some value itself rather than nothing. Section 363(h)(3). Certainly, the effect of a sale on the other co-tenant can be a proper consideration and might in a proper case result in a denial of the right to sell both interests. See In re Coombs, 86 B.R. 314 (Bankr.D.Mass.1988). It is also clear that this was not property used for production of electric energy or natural gas. Section 363(h)(4). Of course, as it turned out, no forced sale of this estate asset was necessary. The Debtor and his wife made the sale without coercion, and even against admonishments not to do so. Commencement of a section 363(h) hearing would most likely be an idle act at this time
 
 
 [9]
 In this case, for example, at the time of filing of the bankruptcy the value of the residence was at least $600,000 and the whole encumbrance was $380,000. Therefore, even if an ordinary creditor could not force a sale, the "value" of the Debtor's interest was $110,000. We recognize that the homestead exemption is $45,000, but that would not change the value of the property, even though a creditor could not reach that amount
 
 
 [10]
 Although the trustee did not file his withdrawal of the "No Asset" report until December 7, 1987, more than a month after a bankruptcy judge had ordered him to withdraw the report, that does not amount to laches. The withdrawal occurred before the Reeds suffered any damage. Moreover, within two weeks of the filing of the report, the Reeds learned that the Trustee intended to withdraw it
 
 
 [11]
 We, of course, recognize that this is an appeal from a preliminary injunction order. Nothing we say here is intended to preclude other findings of the bankruptcy court after it has conducted further plenary proceedings on the matter