In re Mathew G. FARR, Debtor.

S & C Home Loans, Inc., Appellant,

v.

Mathew G. Farr, Appellee.

BAP No. NC–01–1388–MaRyP.
Bankruptcy No. 97–10870.
Adversary No. 97–1147.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 25, 2002.

Filed May 6, 2002.

Timothy W. Hoffman, Abbey, Weitzenberg, Hoffman & Emery, P.C., Santa Rosa, CA, for S & C Home Loans, Inc.

Michael C. Fallon, Santa Rosa, CA, for Mathew G. Farr.

Before: MARLAR, RYAN and PERRIS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

## INTRODUCTION

A judicial lienholder has challenged the bankruptcy court's application of § 522(c)[1] to protect the debtor's entire real property homestead, instead of just the $100,000 claimed allowance under the state's exemption law. Finding no conflict, on these facts, between § 522(c) and California law, we hold that the court misapplied § 522(c) in invalidating the creditor's lien in its entirety. We REVERSE.

## FACTS

Debtor Mathew Farr ("Farr"), filed a voluntary chapter 7 petition on March 12, 1997. In his bankruptcy schedules, Farr listed a one-half joint interest in residential real property, located in Sebastopol, California, with a current market value of $550,000. That property was subject to a secured debt in the amount of $340,000. Farr claimed the statutory $100,000 homestead exemption, under California law,[2] and no party in interest objected. Nor has his exemption claim been disputed in this appeal.

On June 12, 1997, S & C Home Loans, Inc. ("S & C") filed a nondischargeability action against Farr, and obtained a judgment for fraud pursuant to § 523(a)(2)(A), in the amount of $793,533.28.

---

**1.** Unless otherwise indicated, references to "chapter" or "section/§" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

**2.** Farr claimed a $100,000 homestead exemption under Cal.Civ.Proc.Code § 704.920, the declared homestead statute. (Presumably the citation should have been to Cal.Civ.Proc. Code § 704.730(3) (West 1987 & Supp.2002).) At the time Farr filed his petition, in March of 1997, Cal.Civ.Proc.Code § 704.730 provided homestead exemptions of $50,000, $75,000, or $100,000, depending on the homeowner's age, income, and family status.

Farr received his bankruptcy discharge on July 2, 1997, after which time the automatic stay was no longer in effect as to him. *See* § 362(c)(2)(C). Farr recorded a declaration of homestead for the residence on December 12, 1997. Thereafter, S & C recorded an abstract of judgment on February 5, 1998, thereby creating a lien against any nonexempt equity in Farr's residence. *See* Cal.Civ.Proc.Code §§ 697.340(a), 704.950(c) (West 1987). In July, 1998, S & C filed a motion seeking approval from the bankruptcy court to enforce. its lien through the sale of the residence, in accordance with California's homestead statutes.

S & C submitted appraisal evidence showing that the fair market value of the residence, as of the commencement of the bankruptcy case, was higher than had been reported by Farr in his schedules, and maintained that Farr had overstated the amount of secured debt against the property. S & C argued that its lien should be satisfied from the nonexempt equity in the residence (*i.e.*, any value over and above the combined amount of any senior liens and the homestead exemption).

The bankruptcy court denied the motion on the grounds that § 522(c) protected Farr's entire residence from a lien for the type of nondischargeable debt held by S & C. *S & C Home Loans, Inc. v. Farr (In re Farr)*, 224 B.R. 438 (Bankr.N.D.Cal.1998) (*Farr I*). S & C filed a notice of appeal to district court, which dismissed it as having been untimely filed.

On April 4, 2000, Farr's bankruptcy case was closed. The residence, having been listed and disclosed in the schedules, had not been administered by the trustee. Therefore, pursuant to § 554(c), it was deemed abandoned to Farr. Despite the bankruptcy court's denial of S & C's motion seeking sale of the residence, the judicial lien was not released and remained of record.

In July 2001, Farr reopened his bankruptcy case, and sought to sell the residence. Despite the bankruptcy court's prior denial of S & C's motion seeking sale of the residence, S & C's judicial lien had not been released and remained of record. Therefore, Farr applied for an Order to Show Cause seeking to hold S & C in contempt for refusing to voluntarily release its lien.

In response, S & C argued again that there was nonexempt equity in the residence to which its lien attached. It also submitted a current appraisal showing that the residence had appreciated to a current fair market value of $1,300,000.

 Following a hearing, the court's decision was published. *S & C Home Loans, Inc. v. Farr (In re Farr)*, 266 B.R. 197 (Bankr.N.D.Cal.2001) ("Farr II"). The court relied on its § 105(a) equitable authority "to make orders necessary to enforce the debtor's rights under the Bankruptcy Code" in granting Farr's contempt motion. The court concluded that a determination of whether the residence had a nonexempt component was unnecessary, because the bankruptcy case had been fully administered and closed. The court once again held that § 522(c) protected the entire property from S & C's lien, even that value which exceeded the $100,000 exemption provided for under California law.[3]

On August 6, 2001, judgment was entered in favor of Farr, holding that S & C

---

**3.** In this case the same legal principle, concerning the applicability of § 522(c), was applied in the two bankruptcy proceedings. According to the doctrine of law of the case, the "reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir.1986). The bankruptcy court declined to apply the doctrine of law of the case, or to order contempt sanctions, because it reasoned that the

had "no right, title or interest" in the residence. This appeal was timely filed.

## ISSUE

The issue on appeal is whether the bankruptcy court erred in applying § 522(c)(1) to invalidate S & C's lien interest in Farr's residence.

## STANDARDS OF REVIEW

■ In this case, the bankruptcy court interpreted statutory law, including § 522(c). We review such issues of law *de novo*. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1383 (9th Cir.1994).

■ We review the bankruptcy court's decision to grant Debtor's motion for contempt, pursuant to § 105(a), under an abuse of discretion standard. *See Lemon v. Kurtzman*, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). The court abuses its discretion if it bases its ruling upon an erroneous view of the law. *Sam Michael Schreiber, M.D., Inc. v. Halstead (In re Halstead)*, 158 B.R. 485, 487 (9th Cir. BAP 1993), *aff'd*, 53 F.3d 253 (9th Cir.1995).

## DISCUSSION

### A. Farr's Homestead Exemption

■ Allowed exemptions, along with the bankruptcy discharge, aid a debtor's "fresh start" by enabling the debtor to emerge from bankruptcy with adequate and necessary possessions. H.R.Rep. No. 95–595, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087. Exemptions "let the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case," by setting aside certain property as exempt. 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 522.01, p. 522–10 (15th ed. rev.2002).

Section 522 of the Bankruptcy Code allows a debtor to exempt certain property from the bankruptcy estate. That section includes an "opt-out" for states to impose their own lists of applicable exemptions. California has chosen, pursuant to § 522(b)(1) and Cal.Civ.Proc. Code § 703.130 (West 1987), to "opt out" of the federal exemption scheme. As a result, the nature and amount of Farr's homestead exemption was determined by California law.

■ On his bankruptcy schedules, Farr claimed a $100,000 exemption, which was the maximum amount allowed under state law. California, like most states, allows a maximum dollar amount for the homestead exemption. *See Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1318–19 & n. 3 (9th Cir.1992).

An example of the application of California law was illustrated in *Hyman*. There,

---

appeal of its prior decision had not been resolved on the merits, and it therefore ruled anew on the § 522(c) issue, while at the same time confirming its prior ruling. *See Farr II*, 266 B.R. at 199 & n. 1.

We do not reach the propriety of the court's decision not to apply law of the case, as it has not been challenged. Moreover, based on our disposition reversing on the merits, we find that the court's decision to proceed a second time on the same issue was appropriate. A court may reconsider previously decided legal questions when there has been an intervening change of controlling authority, or new evi-

dence has surfaced, or where the previous disposition was clearly erroneous and would work a manifest injustice. *See Jeffries v. Wood*, 75 F.3d 491, 493 (9th Cir.1996).

Nor was the applicability of issue or claim preclusion presented in the bankruptcy court proceedings or in this appeal. *Silva v. Smith's Pac. Shrimp, Inc. (In re Silva)*, 190 B.R. 889, 892 (9th Cir. BAP 1995) (burden of proof is on party asserting preclusion). Therefore, while we note their existence, we need not and do not address those doctrines in this appeal.

the debtors claimed a $45,000 homestead exemption on a residence valued at $415,000, which also had consensual liens of $347,611 attached to it. When the trustee attempted to sell the Hymans' home, claiming that there was equity in excess of the homestead exemption and consensual liens, the Hymans asserted that they had exempted their entire home from the bankruptcy estate. Alternatively, they argued that any postpetition appreciation in the value of the home inured to them. *Id.* at 1318. The Ninth Circuit rejected both claims. Relying on the plain language of the California homestead statute, the appellate court held that the Hymans could not exempt their entire home, and found that " 'California does not permit a debtor to exempt his entire interest in a homestead, but specifically limits the dollar amount up to which a homestead exemption can be claimed.' " *Hyman,* 967 F.2d at 1319 n. 5 (quoting *Schwaber v. Reed (In re Reed),* 940 F.2d 1317, 1321 (9th Cir.1991)).

Thus, Farr's homestead exemption was limited by statute to $100,000, as he had claimed. *See Hyman,* 967 F.2d at 1320 n. 9.

### B. Section 522(c)

Notwithstanding the Ninth Circuit's application of California exemption law in *Hyman,* the bankruptcy court found that § 522(c) mandated that Farr's entire equity interest in the residence was not liable for a nondischargeable debt for fraud. We believe that conclusion was erroneous.

Section 522(c) establishes the postbankruptcy relationship between "property exempted" in the bankruptcy case and prepetition debts. This section, as amended in November, 2000, provides:

(c) Unless the case is dismissed, **property exempted under this section is not liable during or after the case** for any

debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) [certain tax claims] or section 523(a)(5) [support claims] of this title;

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed;

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

11 U.S.C. § 522(c) (2000) (emphasis added).

Section 523, which is incorporated in part by § 522(c), provides an exception from discharge for certain types of debts. Section 522(c) then specifies certain nondischargeable debts which may be pursued against a debtor's exempted property. These include debts for taxes (§ 523(a)(1)), alimony, maintenance or support

(§ 523(a)(5)), debts of the type described in § 523(a)(4) and (a)(6) owed to federal depositories, or debts in connection with educational financial assistance fraud.

The legislative history of this section also shows that it was enacted to insulate exempt property from any nondischargeable prepetition debts which are not listed as exceptions. *See* S.Rep. No. 95–989, at 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862; H.R.Rep. No. 95–595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6317.

▮▮▮▮ Section 522(c)(2) further denies a debtor's exemption for valid liens, such as tax liens and liens that have not been avoided in bankruptcy. The rule of *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), that unchallenged liens pass through bankruptcy unaffected, was codified in § 522(c) to uphold the enforcement of valid liens on both exempt and nonexempt property. H.R.Rep. No. 95–595, *supra*, at 361. A lien creditor, whose lien has not been avoided in bankruptcy, is generally free to pursue its *in rem* remedies under state law, subject to the provisions of the automatic stay in § 362(a). *Johnson v. Home State Bank*, 501 U.S. 78, 82–84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

Thus, § 522(c) performs both a protective function, by preserving the exemption if nondischargeable claims other than those specifically excepted by § 522(c) are sought to be enforced against exempt property, and a limiting function, by denying the exemption protections for certain kinds of nondischargeable claims and unavoided liens.

Here, the bankruptcy court consulted legislative history and interpreted § 522(c)(1) correctly when it stated: "The clear intent of Congress in section 522(c) was to preserve *property exempted* in bankruptcy for satisfaction of tax and sup-

port obligations and, if the debtor has no such debts, for the debtor's fresh start." *Farr II*, 266 B.R. at 198 (emphasis added).

The bankruptcy court erred, however, in two respects: (1) it read into these facts a conflict between property exempted under California law and "property exempted" under § 522(c); and (2) it misused its equitable powers to invalidate S & C's lien.

### C. "Property Exempted"

▮▮▮▮ Exempt property is property of the estate which a chapter 7 trustee cannot liquidate or distribute to creditors holding allowed claims, because it has been withdrawn from the estate for the benefit of the debtor. *See Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

▮▮▮ In this case, "property exempted" in § 522(c) means only the $100,000 homestead exemption allowed by California exemption law. The plain language of § 522 supports this interpretation of "property exempted." "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

▮▮▮ In interpreting a statute, a court must look not only to the words of the provision, but also to the relation of those words to the whole statute. *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). Section 522 governs allowed exemptions from the bankruptcy estate, rather than the debtor's equity interest in property, which is controlled by § 541(a) (determining "property of the estate"). "Property exempted" is not specifically defined in § 522(c), but the subsection refers to "property exempt-

ed under this section." "This section" refers to all of § 522, and thus the language of subsection (c) does not carry an internally inconsistent definition.

The bankruptcy court interpreted "property exempted" in § 522(c) to mean that Farr's *entire* equity interest in the residence was protected from a nondischargeable fraud debt. That interpretation of § 522(c) is contrary to *Hyman* and *Reed*.

The nature of exempt property was illustrated in *Reed*. There, the issue was whether the trustee could recover the nonexempt proceeds, consisting of postpetition appreciation, from the sale of the debtor's homestead. California law provided that the sale revested the $45,000 statutory exemption amount in the debtor, but the debtor nonetheless claimed an interest in all of the proceeds. The court held that, prior to the sale, the residence itself and any nonexempt proceeds were part of the bankruptcy estate. Therefore, despite the debtor's protestations, the court held that the debtor's exemption claim limited his undisputed ownership interest only to the exemption amount. *See Reed*, 940 F.2d at 1321.

The bankruptcy court distinguished *Reed* by the fact that Farr's residence, having passed through the bankruptcy estate without being administered, had revested in Farr. *See Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 913–14 (9th Cir. BAP 1999) (property that is technically abandoned under § 554(c) is "not automatically reeled back [into the estate] by virtue of reopening"). The bankruptcy court held: "Once the property is no longer in the estate, it is property which has been exempted and is therefore protected by 522(c)." *Farr II*, 266 B.R. at 199. Thus, the court declined to follow *Reed* because § 522(c) was not mentioned in, nor relevant to *Reed*. "[T]he issue there was the rights of the bankruptcy estate, not enforcement of an individual debt." *Id.* at 198.

We disagree, and believe *Reed* is relevant to our case. Applying the holding in *Reed* to Farr's revested residence, we conclude that the entire residence now belongs to Farr, but the "exempt" portion thereof is limited to the property that is subject to the exemption, as determined by Farr's exemption claim under California law. In this case, that exemption is $100,000.

Farr attempts to draw a distinction between "exempt property" and "debtor's exempt interest in property," maintaining that if Congress meant to protect only the exemption amount, it would have used the latter term. The bankruptcy court agreed with this reasoning and stated: "It [§ 522(c) ] does not say 'the debtor's exempt interest in property.' If it did, the court would agree with S & C." *Farr II*, 266 B.R. at 199.

Farr illustrates this dichotomy with § 522(f)(1) (providing for avoidance of a judicial lien which impairs the debtor's exemption), and its requirement for the "fixing of a lien on an interest of the debtor in property." 11 U.S.C. § 522(f)(1). His argument is inapposite, however, because the quoted language from subsection (f)(1) refers to the debtor's *ownership* interest, not to an exemption interest. *See Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). That section goes on to examine the impairment of an "exemption," not of an "exempt interest." We are unable to find any other reference to an "exempt interest" as being something different from the exempted property itself.

A recent BAP decision is controlling on this issue. In *Morgan–Busby v. Gladstone (In re Morgan–Busby)*, 272 B.R. 257

(9th Cir. BAP 2002),[4] the debtors claimed an exemption for a number of shares of stock which they valued in the aggregate at $10,838, the allowable limit under California's "wild card" exemption. When the trustee sought court approval to sell the shares, the debtors argued that the shares themselves had been exempted, and that the trustee was precluded from selling them. Relying on *Hyman*, the BAP held that the debtor's exempt interest in any proceeds from the sale of the shares was limited to the amount of the claimed exemption of $10,838. Because California's exemption scheme authorized exemptions only in monetary amounts, the debtors' ambiguous claim that the shares themselves were somehow exempt was construed against the debtors in favor of the statutory scheme. *Id.* at 265–66.

■ Similarly, in the present case, Farr clearly claimed only a $100,000 exemption in the property, which was the statutorily allowed amount. Farr could not subsequently claim an exemption in a greater amount. Similarly, the bankruptcy court had no equitable authority under § 105(a) to expand Farr's claimed exemption also to include the entire value of the nonexempt equity. A bankruptcy court's equitable powers may only be exercised within the confines of the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

The bankruptcy court relied on *In re Karrer,* 183 B.R. 177 (Bankr.N.D.Iowa 1994), but that case is distinguishable. In *Karrer,* the chapter 7 debtor claimed a ˙ homestead exemption in his entire homestead, which exceeded the allowable exemption under Iowa law, but his exemption claim was not challenged. An unsecured creditor then obtained a non-dischargeable money judgment against the debtor, based on the debtor's fraud. The debtor moved to avoid any lien resulting from the judgment, under § 522(f)(1).

■ The bankruptcy court found that the exemption in the entire homestead was valid, and therefore the creditor could not subject the homestead to the creditor's claim, pursuant to § 522(c)(1). *Id.* at 180. *Karrer* is consistent with Ninth Circuit law, which adheres to the general principle that an unchallenged, unambiguous exemption claim cannot belatedly be challenged on valuation grounds. *See Morgan–Busby,* 272 B.R. at 265–66. In the case at bar, Farr claimed only the allowed $100,000 homestead exemption, although his property was valued at $550,000. *Karrer* did not address whether § 522(c) protected any nonexempt property, which is not included within a debtor's claimed exemption. It therefore has no application here.

In contrast, in our case, California law enabled S & C to obtain a lien against any equity which was left after senior liens and the $100,000 homestead exemption, and S & C's lien has not been avoided. Thus, § 554(c)'s revesting provision does not affect S & C's lien validity. A recent BAP case is illustrative. In *Culver, LLC v. Chiu (In re Chiu),* 266 B.R. 743, 748–52 (9th Cir. BAP 2001), we held that debtors who had voluntarily sold their residence, after their bankruptcy case was closed, nonetheless had standing to bring a motion to avoid a prepetition judicial lien claimed against the proceeds, which were being held in escrow in order to pay the lienholder. The BAP applied federal law to resolve the lien avoidance issue retroactively to the petition date, even though the proceeds were no longer property of the es-

---

4. The *Morgan–Busby* opinion was recently filed, and the parties did not have the benefit of reviewing it for this appeal. Still, its reasoning applies here.

tate or subject to distribution by the trustee. *Id.* at 751.

Farr further contends that exemptions do not come into play until there is a forced sale, or a bankruptcy equivalent. *Hyman,* 967 F.2d at 1321 (debtor's right to use the exemption comes into play at time of sale attempt by trustee); *Katz v. Pike (In re Pike),* 243 B.R. 66, 70 (9th Cir. BAP 1999) (filing of a bankruptcy petition is the functional equivalent of a forced or involuntary sale). Because the bankruptcy case has been closed and Farr voluntarily sought to sell the residence, Farr maintains that the exemption rules do not apply.

This argument is without merit, in light of Farr's motion which sought the release of S & C's lien from the residence, claiming the protection of the California homestead statute.

### D. Preemption Was Unnecessary

■ The bankruptcy court's decision, in effect, preempted California exemption law by creating a conflict with § 522(c) where none existed.

■ The fundamental effect of a state's opting out of the federal exemption scheme is that a state may define the nature and amount of the property that may be exempted. *See In re Scott,* 199 B.R. 586, 593 (Bankr.E.D.Va.1996). Section 522(c) does not define or redefine what an exemption is. Its "fresh start" principles may, however, *override* state law limitations, even definitional ones, by preempting conflicting state law. *Bruin Portfolio, LLC v. Leicht (In re Leicht),* 222 B.R. 670, 680 (1st Cir. BAP 1998) (Massachusetts law, which withholds homestead protection against debts contracted for before homestead is acquired, conflicts with, and thus is preempted by, § 522(c)). *See also* 4 *Collier on Bankruptcy, supra,* ¶ 522.02[2], p. 522–14 ("Section 522(c) pro-

vides that exemptions are effective against all claims including many nondischargeable claims, and the Bankruptcy Code preempts contrary state law.").

■ State exemption law may conflict with § 522(c) by enlarging protections for the debtor's exempt property, as in *Leicht,* or by restricting the liability that is imposed under federal law. *See generally Davis v. Davis (In re Davis),* 170 F.3d 475 (5th Cir.1999) (involving a debtor's right under Texas law to prevent his ex-spouse's seizure and sale of his homestead to enforce a support claim notwithstanding § 522(c)(1)'s exception for exemption protection for such debts) *("Davis II").*

The bankruptcy court relied on an earlier *Davis* opinion, *Davis v. Davis (In re Davis),* 105 F.3d 1017, 1021–23 (5th Cir. 1997) *("Davis I"),* for the general proposition that "[a] debtor's rights under section 522(c) are governed by federal law, not state law." *Farr II,* 266 B.R. at 198. That opinion was subsequently abrogated by the Fifth Circuit upon rehearing *en banc. See Davis II,* 170 F.3d at 477 (reversing its prior reversal in *Davis I).*

*Davis II* held, among other things, that § 522(c) is not a preemptive statute because it is not self-executing, and that debt enforcement is controlled by state law. *Davis II,* 170 F.3d at 481–82. Therefore, *Davis II* does not support the bankruptcy court's analysis in this case. Neither *Davis I* nor *Davis II* are on point because they involved a perceived conflict between state and federal law as to the enforceability of certain prepetition debts against *exempt* property. Here, S & C was not seeking to enforce its judgment lien on Farr's exempt $100,000, but only as to the *nonexempt* equity.

Farr also relies on *Walters v. U.S. Nat'l Bank in Johnstown,* 879 F.2d 95 (3rd Cir. 1989). The issue there was whether the

debtor could avoid a prepetition judgment lien which impaired his homestead exemption. As in our case, the lien resulted from a debt for fraud, which was held to be nondischargeable by the bankruptcy court. The Third Circuit reasoned that Congress, in enacting § 522(c), intended to protect some, but not all nondischargeable debts, such as a debt for fraud, and it therefore held that lien avoidance was permissible. *Id.* at 97–98. *Walters* is consistent with most case law holding that liens resulting from nondischargeable debts are avoidable under § 522(f) if they impair the debtor's exemption. *See, e.g., In re D'Amelio,* 142 B.R. 8, 9 (Bankr.D.Mass. 1992) (citing *Ewiak v. Ebner (In re Ewiak),* 75 B.R. 211 (Bankr.W.D.Pa.1987)).

In summary, our facts do not present a conflict between California's exemption statutes and § 522(c)(1) regarding the types of debts which are enforceable against Farr's exempt property. Here, S & C sought to enforce its lien against nonexempt property. Therefore, the bankruptcy court should not have "avoided" the entire S & C lien.

### E. Applicability of § 522(c)(2)

Section 522(c)(2) provides that a debtor's exempt property may be liable for a prepetition debt secured by a lien that is not avoided in bankruptcy.

S & C's lien, although obtained postpetition, secures Farr's liability for a prepetition debt. Because Farr has not avoided S & C's lien,[5] the lien falls within the protections of § 522(c)(2).

---

5. This appeal does not raise the question, and consequently we do not consider, whether Farr could avoid or limit the extent of the S & C judgment lien utilizing a provision of the Bankruptcy Code other than § 522(c).

6. In addition, S & C's position has been, throughout these proceedings, that it seeks to

The application of § 522(c)(2) on these facts does not create a conflict between state and federal law by inviting S & C to enforce its lien against *exempt* homestead property. Lien interests are creatures of state law, and S & C's lien is only enforceable to the extent there is nonexempt property. *See* Cal.Civ.Proc.Code §§ 697.340(a), 704.950(c) (West 1987).[6]

Therefore, the bankruptcy court abused its discretion by using § 522(c) to avoid S & C's lien on Farr's residence.

### CONCLUSION

"Exempted property" in § 522(c) means only the property that is subject to the exemption. As determined by California law, Farr's exempted property consisted of the $100,000 homestead, and did not extend to any nonexempt equity in the real property to which S & C's lien might attach. Farr's "fresh start" was protected by the California exemption scheme, grafted onto the Bankruptcy Code. On these facts, there was no conflict of law because S & C did not attempt to enforce its nondischargeable lien claim against exempt property.

Moreover, to the extent S & C's lien attached, it remained a valid lien on Farr's residence, since it was not avoided under the Bankruptcy Code. Section 522(c) does not prevent S & C from satisfying its lien from Farr's available nonexempt equity, pursuant to state law.

The bankruptcy court therefore abused its discretion by using § 522(c) to avoid S & C's lien on Farr's residence and in or-

---

enforce its lien only against any available nonexempt equity in Farr's residence, and we affirm on that basis. Any contrary position would be subject to judicial estoppel. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001).

dering that S & C had no right, title, or interest in Farr's residence. The judgment is **REVERSED**.