**In re Joseph D. RAFFONE, Vita Raffone, Debtors.**

**No. 96–32183.**

United States Bankruptcy Court, D. Connecticut.

Jan. 16, 2008.

(D.Me.1998).

Carl T. Gulliver, Esq., Coan, Lewendon, Gulliver & Miltenberger, LLC, New Haven, CT, for Debtor–Movants.

Ellery E. Plotkin, Esq., Law Offices of Ellery E. Plotkin, Stamford, CT, for Creditor–Respondents.

## MEMORANDUM OF DECISION ON MOTION TO AVOID LIEN AND COMPEL COMPLIANCE WITH SECTION 522(c)

ALBERT S. DABROWSKI, Chief Bankruptcy Judge.

### I. INTRODUCTION

In the above-captioned matter the Debtors, Joseph and Vita Raffone (hereafter, jointly, the "Debtors" or "Raffones") seek declaratory relief to prevent the respondent creditors from exercising certain post-petition judgment lien rights in real property owned by the Debtors. For the reasons stated herein, the Court declines to provide the relief requested by the Debtors.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant contested matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(K), (O).

### III. FACTUAL BACKGROUND

On June 27, 1996 (hereafter, the "Petition Date"), the Debtors commenced the instant bankruptcy case through the filing in this Court of a joint voluntary petition pursuant to 11 U.S.C. § 302(a). Relief on said petition was simultaneously ordered by this Court. On that same day the Debtors filed Schedules and Statements. Schedule A—"Real Property"—disclosed that the Debtors jointly held a fee simple interest in an improved parcel of real property known as and numbered 19 Thompson Street, East Haven, Connecticut (hereafter, the "Thompson Property"), which was valued by them at $160,000.00.

On Schedule C—"Property Claimed as Exempt"—the Debtor Joseph Raffone (hereafter, "Joseph") elected the federal bankruptcy exemption scheme under 11 U.S.C. § 522(b)(1), and pursuant to 11 U.S.C. § 522(d)(5), claimed an exemption in his interest in the Thompson Property in the amount of $5,443.00 (hereafter, the "Exemption"). No objection to the Exemption was filed by any party.

Prior to the commencement of the Debtors' bankruptcy case, certain of their credi-

tors (hereafter, the "Franchise Creditors")—including the Respondents James Mason, Arletta Mason, and Samuel Mosier—commenced a civil action against them and others in the Connecticut Superior Court, Judicial District of New Haven at New Haven, Docket No. CV–95–0362322–S (hereafter, the "Superior Court Action"). In the Superior Court Action the Franchise Creditors claimed, *inter alia*, that the Raffones had defrauded them in connection with the offering of certain franchise opportunities (hereafter, the "Franchise Claims"). Also prior to the Debtors' bankruptcy filing, the Court in the Superior Court Action entered an order granting a prejudgment attachment upon the Thompson Property, *inter alia*, in favor of the Franchise Creditors (hereafter, the "Attachment").[1]

On October 21, 1996, the Debtors, through counsel, filed a motion in this Court to avoid the Attachment by application of Bankruptcy Code Section 522(f). On December 26, 2000, this Court entered a Memorandum of Decision and Order that, *inter alia*, (i) found the Petition Date value of the Thompson Avenue Property to be $150,000.00; (ii) determined the balances of certain encumbrances thereon, and then, (iii) consistent with the foregoing findings, avoided the Attachment to the extent that it exceeded $28,619.00. The partially-avoided Attachment shall hereafter be referred to as the "Modified Attachment".

Also in 1996, a subset of the original Franchise Creditors—namely, Respondents James Mason, Arletta Mason, and Samuel Mosier—commenced an adversary proceeding in this Court (Adv.Pro. No. 96–3155) that sought to have the Court enter a monetary judgment in their favor on the Franchise Claims and declare such judgment to be non-dischargeable in the Debtors' bankruptcy case pursuant to Bankruptcy Code Sections 523(a)(2)(A) and (B) (hereafter, the "Adversary Proceeding").

On January 15, 2002, after trial, this Court entered final judgments in the Adversary Proceeding (Doc. I.D. Nos. 92 and 93) (hereafter, the "Judgment(s)"). The Judgments effected the following relief: (i) they held Joseph liable in certain dollar amounts for "false pretenses" and "actual fraud" upon James Mason, Arletta Mason, and Samuel Mosier in connection with their Franchise Claims;[2] (ii) they declared the monetary Judgments against Joseph to be non-dischargeable; and (iii) they found in favor of Debtor Vita Raffone (hereafter, "Vita") on the claims against her. On February 5, 2002, following the conclusion of the Adversary Proceeding, the Debtors' bankruptcy case was closed.

On March 11, 2002, in aid of the collection of their Judgments against Joseph, Mr. Mosier and the Masons (hereafter, collectively, the "Lien Creditors") recorded a Certificate of Judgment Lien upon the land records of the Town of East Haven (at Volume 1250, Page 92) (hereafter, the "Judgment Lien"). Among other things, the Judgment Lien stated, "[t]his lien is filed within four months after … judgment and partially relates back, as more particularly set forth in an order of the Bankruptcy Court dated 12/26/00, to an attachment of Real Property recorded on 3/13/95 at Volume 826 and page # 304 of the East Haven Land Records."

---

1. The Attachment encumbered the interests of *both* of the Raffones in the Thompson Property.

2. Specifically, the Court entered judgments against Joseph as follows: (i) in favor of Samuel Mosier in the amount of $70,366.86, and (ii) in favor of James and Arletta Mason in the amount of $47,942.12.

By order dated December 8, 2003, the Superior Court dismissed the Superior Court Action upon the motion of the Raffones.

On May 2, 2007, more than five years after this bankruptcy case was closed, this Court reopened the case (Doc. I.D. No. 54) at the request of the Debtors (Doc. I.D. No. 42), to permit them to prosecute the instant motion seeking relief from the Judgment Lien under Bankruptcy Code Section 522.

## IV. DISCUSSION

### A. The Contentions of the Parties.

The practical and essential question in this matter is who—Joseph or the Lien Creditors—is entitled to the benefit of any growth in the value of Joseph's equity in the Thompson Property since the commencement of his bankruptcy case in 1996? As discussed below, this Court ultimately determines that the Lien Creditors are entitled to said value to the full extent of their monetary Judgments.

The Lien Creditors claim that their monetary Judgments are presently secured by two separate lien positions in the Thompson Property—first, by the lien of the Modified Attachment, and then by the Judgment Lien for the balance of the monetary Judgments.

The Raffones, by contrast, assert that Code Section 522(c) renders as exempt any equity position in the Thompson Property that might otherwise be occupied by the Judgment Lien, and thus prevents the Re-spondents from securing their monetary Judgments with any interest in the Thompson Property beyond the Modified Attachment.

In order to resolve the competing interests of the parties in the Thompson Property—*i.e.* the Exemption and the Judgment Lien—it is instructive to review first the nature and extent of a property interest that does not appear to be in dispute between the parties—the Modified Attachment.

### B. The Nature and Extent of the Modified Attachment.

The Attachment was a property interest that pre-dated the commencement of the Debtors' bankruptcy case. At the time of its creation it stood as security for the claims of *all* of the Franchise Creditors, subject to their obtaining final monetary judgments that would "relate back" to it. In this sense, the Attachment was a *defeasible* property interest as against any of the Franchise Creditors who ultimately failed to obtain a monetary judgment against one or both of the Raffones. In other words, for a Franchise Creditor to share in the security of the Attachment, his/her *unliquidated* claim must have been *fixed* by a final monetary judgment of a court of competent jurisdiction.[3]

The Lien Creditors are the only Franchise Creditors who successfully established the monetary liability necessary to "relate-back" and access the security of the Modified Attachment. They accom-

---

**3.** This liability could have been fixed (i) in a Bankruptcy Court adversary proceeding—as was accomplished by the Lien Creditors here—or, alternatively, (ii) at the conclusion of the bankruptcy case (or upon relief from the stay), through continued prosecution of the Superior Court Action in state court to obtain a final monetary judgment against the Raffones, not for purpose of establishing *per-sonal* liability beyond the amount of the Modified Attachment—which would offend the discharge injunction—but only for the purpose of fixing an *in rem* liability in relation to the Modified Attachment. The latter, *i.e.* state court, strategy is now moot since no Franchise Creditor pursued it, and the Superior Court Action has been dismissed.

plished this by employing a litigation strategy in the Bankruptcy Court during the pendency of the Raffones' bankruptcy case, *i.e.* through the prosecution of the Adversary Proceeding, which sought, *inter alia,* a monetary judgment against the Raffones.[4] Through the Adversary Proceeding the Lien Creditors were able to fix the personal liability of Joseph (i) to Mr. Mosier in the amount of $70,366.86, and (ii) to the Masons in the amount of $47,942.12. Accordingly, those judgment amounts relate back to, and are secured *pro rata* by, the Modified Attachment.

Since the Respondents are the only viable claimants to the Modified Attachment, then their respective interests in its $28,619.00 value[5] are as follows: (i) Respondent Mosier—$17,021.78 (59.5%) and (ii) Respondents Mason—$11,597.22 (40.5%).[6]

When this Court partially avoided the Attachment under the calculus set forth in Code Section 522(f)(2) (1996), it (i) *found* the Petition Date value of the Thompson Property to be $150,000.00, (ii) gave effect to, *i.e.* preserved as "un-impaired", the Exemption, and (iii) avoided the junior-most encumbrance—the Attachment—to the lowest dollar value supported by "equity" for that position. In theory then, as of the Petition Date, there was no "equity" in the Thompson Property for Joseph save his Exemption interest. However, because, by definition, the total of the Exemption and all unavoided encumbrances did not exceed the Petition Date value of the Thompson Property, and because that property was abandoned to the Raffones not later than the closing date of their bankruptcy case,[7] any appreciation in the value of Joseph's interest in the Thompson Property since the Petition Date, has created equity, initially, for the interest of Joseph in the same.

The ultimate question in this contested matter, considered below, is whether Joseph's equity, if any (hereafter, "Joseph's Equity"), is available for judgment execution by the Lien Creditors, as holders of non-dischargeable Judgments that exceed the amount of the Modified Attachment, or whether Joseph's Equity is exempt from those Judgments and the Judgment Lien that seeks to enforce them against the Thompson Property.

## C. The Efficacy of the Judgment Lien—Section 522(c).

The Court now turns to the heart of the present matter—the efficacy of the Judgment Lien. Again, the Judgment Lien is

---

4. The Adversary Proceeding included dischargeability as well as monetary claims. Yet, for the purpose of accessing the value of the Modified Attachment it was not necessary for the Lien Creditors to establish non-dischargeability. Since the secured interest represented by the Modified Attachment was established pre-petition for their benefit, it was only necessary for the Lien Creditors to *liquidate* their claims to access it since unavoided pre-petition secured interests "ride through" a bankruptcy case. *See, e.g.,* 11 U.S.C. § 522(c)(2)(A) (1996).

5. Because judgment in the Adversary Proceeding entered *in favor* of Vita, the Modified Attachment encumbers only *Joseph's* interest in the Thompson Property.

6. In making this statement the Court assumes, without finding, that the market value of the Thompson Property has not declined since the Petition Date, and that the balance(s) of any encumbrances prior in right to the Modified Attachment have not increased more than any increase in the market value of the Thompson Property.

7. Code Section 554(c) provides in relevant part that "any property scheduled ... not otherwise administered at the time of the closing of a case is abandoned to the debtor...."

the encumbrance that the Lien Creditors believe secures the portion of their non-dischargeable Judgments that exceeds the value of the Modified Attachment.[8] By contrast, the Raffones assert that Joseph's Equity is exempt property, and thus not answerable for Joseph's judgment debts to the Lien Creditors via their Judgment Lien.

The crux of the profound disagreement in this matter arises from the parties' differing interpretations of the *exemption continuity* language of Code Section 522(c), which provided in relevant part as follows:

> Unless the case is dismissed, *property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except—*
>
> (1) a debt of the kind specified in section 523(a)(1) or 523(a)(5) of this title; or
>
> (1) a debt secured by a lien that is—
>
> (A) (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>
> (ii) not void under section 506(d) of this title; or
>
> (B) a tax lien, notice of which is properly filed; or
>
> (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regu-

latory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

11 U.S.C. 522(c) (1996) (emphasis supplied). Section 522(c) serves the Congressional goal of providing bankruptcy debtors with a "fresh start" by, *inter alia,* insuring that "property exempted" by a debtor during a bankruptcy case remains free from the judgment execution activity of creditors owed certain types of debts.[9]

The Lien Creditors do not dispute that the portions of their Franchise Judgments allegedly secured by the Judgment Lien are subject to the exemption continuity rule of Section 522(c).[10] Rather, the dispute between the parties is focused upon an appropriate interpretation of Section 522(c)'s phrase, "property exempted". In other words, while the parties agree that an exemption claimed in a bankruptcy case continues after the case, they disagree on the extent of the property interest subject to that continuing exemption claim. Specifically, the issue is focused on whether the phrase "property exempted" refers only to the specific exemption interest Joseph actually claimed *(i.e.* $5443.00) or extends to the entire fee simple property interest *in which* he claimed that exemption *(i.e.* his entire interest in the Thompson Property).

### 1. Plain meaning of "property exempted".

The phrase "property exempted" is not a defined term under the Bankruptcy

---

8. Exclusive of judgment interest and costs, those portions are $53,345.08 and $36,344.90 for Respondents Mosier and Mason, respectively.

9. Simply stated, debts excluded from Section 522(c)'s exemption continuity rule include (i) debts rendered non-dischargeable by Section 523(a)(1) (taxes) and Section 523(a)(5) (domestic relations obligations); (ii) obligations secured by unavoided pre-petition liens; and

(iii) the liabilities of certain parties in connection with the failure of certain financial institutions. *See* 11 U.S.C. § 522(c)(1), (2) and (3) (1996).

10. The portion of the Judgments allegedly secured by the Judgment Lien is not encompassed by any of the exceptions to the exemption continuity rule of Section 522(c). *See* fn. 9.

Code. Thus, the Court is left to the task of statutory construction. In this case, the Court believes that "property exempted" has a plain meaning. Because the word "exempted" is a past tense verb form, it is clear that the "property" referred to is limited to that which *had been* successfully exempted at the point in time when the subject exemption became fixed. That property is precisely the exemption that was *claimed* by the debtor; nothing more, nothing less. In this case what was *claimed* by Joseph was the Exemption— literally, $5,443.00 of value in "any property" under Section 522(d)(5), applied by him to his interest in the Thompson Property.

### 2. Legislative purpose of Section 522.

The plain meaning of "property exempted" is also consistent with the legislative purpose behind Sections 522(c) and (d), *inter alia*. That legislative intention includes the Congressional judgment that certain exemptions should have a *fixed* and *limited* value. In this respect it is important to appreciate Congress' thoughtful consideration of what property is necessary for a debtor's "fresh start", as well as its careful crafting of an exemption scheme to reflect its values. In some instances those value judgments compelled Congress to provide an exemption for an *entire* item or class of property *regardless of value, see, e.g.*, 11 U.S.C. § 522(d)(9) ("[p]rofessionally prescribed health aids . . . ."), while in other instances a maximum value was deemed appropriate, *see, e.g.*, 11 U.S.C. § 522(d)(11)(D) (1996) ("a payment, *not to exceed $15,000*, on account of personal bodily injury . . . ." (emphasis supplied)). The Exemption, which is the subject of this contested matter, is of the latter type, *i.e.* one possessing a monetary cap, namely "the debtor's aggregate interest in any property, *not to exceed* in value $800 plus *up to* $7500 of any unused amount of the exemption provided under

[Section 522(d)(1) ]." *See* 11 U.S.C. § 522(d)(5) (1996) (emphasis supplied).

To construe Section 522(c)'s "property exempted" to permit the growth of a monetary cap exemption over time would frustrate the intention of Congress and invite abusive manipulation of exemptions by debtors. An extreme example of such potential abuse, enabled by the Debtors' position here, illustrates this concern. Assume that Joseph had entered bankruptcy owning a total of 5,443 separate parcels of real property—rather than just the Thompson Property—each with a fair market value of $100,000.00, and each encumbered by a mortgage and other unavoidable liens totaling $99,999.00. Then assume that Joseph had utilized his $5,443.00 exemption under Section 522(d)(5) to claim a $1.00 exemption in each parcel. Further assume that in years subsequent to the fixing of Joseph's exemptions, each of his parcels appreciated to a value of $200,000.00. Finally, assume that Joseph then argued, consistent with his position in the matter at bar, that under Section 522(c) his exemption interest had grown coextensive with his equity in each parcel. Is there a principled basis to believe that this sort of calculated leveraging of a narrowly-drawn $5,443.00 exemption into a windfall of $5,443,000.00 comports with the intention of Congress for a bankruptcy debtor's "fresh start"? Or is it eminently more likely that in attaching monetary caps to certain exemptions Congress intended to limit the benefit of those exemptions to the values explicitly stated? This Court is confident that the latter intention, consistent with the plain meaning of the subject provision, reflects the true statutory purpose of Section 522(c).

### 3. Prior judicial construction of Section 522(c).

This Court's construction of the exemption continuity rule of Section 522(c) is also

consistent with the conclusions of other courts that have considered the issue. *E.g., In re Farr,* 278 B.R. 171 (9th Cir. BAP2002); *In re Hyde,* 334 B.R. 506, 513 (D.Mass.2005) (dicta). For example, in *Farr,* a Ninth Circuit Bankruptcy Appellate Panel, reversing the bankruptcy court below, concluded that Section 522(c) does not allow a monetary cap exemption to grow in value over time. What makes *Farr* particularly instructive is the degree to which the facts of that case parallel the case at bar. In *Farr,* as here, the subject of the dispute was a parcel of improved real property in which the bankruptcy debtor was a joint tenant. There, as here, the debtor had claimed as exempt a portion of the subject property under a monetary cap exemption.[11] There, as here, the affected creditor had a pre-petition claim that was liquidated and determined to be non-dischargeable under Section 523(a)(2) in the Bankruptcy Court; after which determination the creditor recorded a judgment lien against the real property in which the exemption was claimed. In each case it was the existence of that judgment lien which ultimately gave rise to a dispute between the debtor and the judgment creditor, in the context of a reopened case, over who was entitled to any equity presently existing over and above the exemption claim amount. In that case, the Bankruptcy Appellate Panel concluded that the debtor's exemption was permanently limited to the $100,000.00 exemption claimed, and "did not extend to any nonexempt equity in the real property to which [the subject creditor's judgment] lien might attach." *Farr,* 278 B.R. at 181. That conclusion is consonant with this Court' own legal analysis in the matter at bar.

**11.** The exemption claimed was a $100,000.00 homestead exemption under state (California) law which, at that time, provided for home-

## V. CONCLUSION

For the foregoing reasons the Debtors' Motion to Avoid Lien and Compel Compliance with Section 522(c) (Doc. I.D. No. 57) shall be **DENIED** by separate order.

stead exemptions of $50,000.00, $75,000.00 or $100,000.00, depending upon the homeowner's age, income, and family status.