IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00065-CV

 

Nu-Way Energy Corporation,

                                                                      Appellant

 v.

 

Billy R. Delp, Jr.,

                                                                      Appellee

 

 

 



From the 96th District Court

Tarrant County, Texas

Trial Court No. 96-183839-00

 



Opinion



 








          Nu-Way Energy Corporation filed suit
against Billy R. Delp, Jr. to collect on a $2 million judgment.  Nu-Way sought
a turnover order for assets held in Delp’s individual retirement account,
including a 1998 judgment rendered in favor of the IRA, or alternatively
garnishment of the proceeds of that judgment.  Delp responded that the IRA, the
judgment, and the proceeds of the judgment are exempt from creditors because the
IRA was confirmed as an exempt asset in his bankruptcy proceedings and the
judgment was obtained with proceeds from the IRA.  The trial court rendered
judgment in Delp’s favor.

          Nu-Way presents ten issues challenging
the court’s findings and conclusions that the IRA is exempt and that the
judgment and its proceeds are exempt and challenging the manner in which the
court awarded attorney’s fees to Delp.  We will reverse and remand.

Background

          Delp was president of Nu-Way in 1991
when he filed a Chapter 11 bankruptcy.  During the course of the bankruptcy
proceedings, Nu-Way obtained a judgment against Delp in excess of $2 million
for breach of fiduciary duty.  Because of the nature of Delp’s liability, the
judgment is a non-dischargeable debt.

          Delp listed the IRA in his bankruptcy
schedule as an exempt asset.  Neither Nu-Way nor any other creditor objected to
the designation of the IRA as an exempt asset.

          Before confirmation of the
reorganization plan in Delp’s bankruptcy, Delp executed an agreement with First
Financial Resolution Enterprises, Inc. (“First Financial”).  Under this
agreement, Delp agreed to purchase: (1) an unsecured debt evidenced by a note
made by Economy Oil Company in favor of the Federal Asset Management Company
(“FAMCO”) in the original principal sum of $660,567; and (2) a secured claim
against Economy in the amount of $350,000 held by FAMCO and secured by 175,000
units in FFP Partners, L.L.P.  First Financial agreed to release Delp from a
personal guaranty he had made in support of a $1.6 million note Economy had
executed in favor of Texas American Bank.[1]

          Although Delp initially agreed to
purchase both the unsecured debt and the secured claim, a company owned by his
son purchased the unsecured debt.  Delp withdrew $250,000 from his IRA to
purchase the secured claim.  First Financial transferred the secured claim by
executing an assignment in favor of “Bank One, Trustee for Billy R. Delp, Jr.
IRA.”[2]  At
the same time, First Financial released Delp from any further liability on his
personal guaranty.

          Litigation ensued between Economy and
Delp regarding the substance of the agreement between them.  Delp believed that
the transaction conveyed the FFP units to his IRA, while Economy contended that
Delp or his IRA acquired only a security interest in the units.  A certificate
of ownership of the FFP units was placed in the registry of the court pending
the resolution of the litigation.  The trial court in the Economy suit rendered
judgment that Delp’s IRA held the note, secured by the FFP units, and that
Economy owned the units themselves.  The judgment ordered Economy to pay
$350,000 to the Delp IRA and decreed that this sum, if not paid, would be
satisfied from the FFP units.

          Nu-Way contends that the IRA lost its
exempt status because Delp withdrew funds from the IRA for his own benefit.  Nu-Way
primarily seeks the turnover of the Economy judgment or to garnish the proceeds
of that judgment, which Economy has now satisfied.  In the alternative, Nu-Way
seeks turnover of sufficient funds in the IRA to satisfy its judgment.  Delp
contends that Nu-Way cannot challenge the exempt status of his IRA because Nu-Way
did not challenge its exempt status during his bankruptcy proceedings or during
the Economy litigation.  Delp also suggests that because the Economy judgment
was rendered in favor of his IRA, neither the judgment nor its proceeds can be
reached by Nu-Way to satisfy its judgment against Delp individually.

          The court made numerous findings of
fact and conclusions of law in this case.  The court primarily found and
concluded that Nu-Way’s claims are barred by res judicata and collateral
estoppel.  The court also found and concluded that Nu-Way cannot reach the Delp
IRA because Nu-Way did not object to Delp’s assertion in bankruptcy court that
the IRA was exempt.  

          Despite these findings and
conclusions, the court went further and addressed the merits of Nu-Way’s claims. 
The court concluded among other things that: (1) Nu-Way cannot have turnover of
the Economy judgment because that judgment was rendered in favor of the Delp
IRA rather than Delp in his individual capacity;[3]
(2) the Economy judgment is exempt from prepetition creditors because it is the
property of the IRA, which was declared exempt in Delp’s bankruptcy
proceedings; and (3) Nu-Way failed to prove that the IRA lost its exempt status
at any time thereafter.    

          The court also found that Nu-Way
committed a breach of contract (the bankruptcy plan) by seeking to recover an
asset held by the Delp IRA.  The court thus awarded Delp trial attorney’s fees
of $385,925 and appellate attorney’s fees of as much as $85,000.  The court
ordered that these fees be paid directly to Delp’s attorneys.

Standard of Review

          The parties tried this suit on a joint
stipulation of the pertinent facts.  See Tex. R. Civ. P. 263.

An agreed statement of facts under rule 263 is
similar to a special verdict; it is the parties’ request for judgment under the
applicable law.  The only issue on appeal is whether the trial court properly
applied the law to the agreed facts.  The appellate court is limited to those
facts unless other facts are necessarily implied from the express facts in the
statement.  In an appeal of an “agreed” case, there are no presumed findings in
favor of the judgment, and the pleadings are immaterial.  

 

          Because the issue on appeal is a pure
question of law, the appellate court performs a de novo review.  A de novo review
is less deferential than ordinary reviews because a trial court has no
discretion in deciding what the law is or in properly applying it.   

 

C & G, Inc. v. Jones, 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005,
pet. denied) (quoting State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735
(Tex. App.—Fort Worth 1996, writ denied)).

Mootness

          Delp contends that Nu-Way’s claims are
now moot because the Economy judgment has been satisfied.  Nu-Way concedes that
its garnishment claim is moot.  However, Nu-Way responds that its claim for
turnover relief is not moot because it is entitled to turnover of the proceeds of
the judgment and because it seeks turnover of as much of the other funds in the
Delp IRA which are determined to be non-exempt as necessary to satisfy Nu-Way’s
judgment against Delp.

          “A case becomes moot if a controversy
ceases to exist or the parties lack a legally cognizable interest in the
outcome.”  Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 642 (Tex. 2005).

          Here, as Nu-Way concedes, no further
controversy exists as to garnishment of the judgment debt owed to the Delp IRA
by Economy because the judgment has been paid.  Accordingly, we dismiss as moot
Nu-Way’s sixth issue, which challenges the trial court’s denial of garnishment
relief.

          However, because Nu-Way essentially
seeks turnover of the entirety of the Delp IRA to satisfy Nu-Way’s judgment,
the remainder of Nu-Way’s claims are not moot.




Res Judicata

          Nu-Way contends in part of its third
issue that the court erred by concluding that events during the bankruptcy
proceedings preclude Nu-Way from pursuing its claims in this suit under the
doctrine of res judicata, collateral estoppel, or a similar theory.  Nu-Way
contends in its fourth issue that the court erred by concluding that the
Economy judgment precludes Nu-Way from recovering turnover of that judgment
under principles of res judicata, collateral estoppel, or a similar theory.

          The trial court concluded that (1) Nu-Way’s
failure to object to the scheduling of the Delp IRA as an exempt asset in the
bankruptcy proceedings, (2) the confirmation of the bankruptcy plan, and (3) the
rendition of judgment in the Economy litigation all bar Nu-Way’s claims under
the doctrine of res judicata.

          The conclusion that Nu-Way’s claims
are barred by events during the bankruptcy proceedings is governed by federal
law.  See John G. & Marie Stella Kenedy Mem’l Found. v. Dewhurst,
90 S.W.3d 268, 287 (Tex. 2002); Dallas Sales Co. v. Carlisle Silver Co.,
134 S.W.3d 928, 931 (Tex. App.—Waco 2004, pet. denied).  A claim of res
judicata under federal law consists of four elements: (1) the parties must be
identical in both suits; (2) the prior judgment must have been rendered by a
court of competent jurisdiction; (3) there must have been a final judgment on
the merits; and (4) the same cause of action must be involved in both cases.  Osherow
v. Ernst & Young, LLP (In re Intelogic Trace, Inc.), 200 F.3d 382, 386
(5th Cir. 2000); SMI/USA, Inc. v. Profile Techs., Inc., 38 S.W.3d 205,
211 (Tex. App.—Waco 2001, no pet.).

          Even if these four elements are
present however, res judicata will not bar a subsequent action unless the
plaintiff “could and should have brought its . . . claims in the former
proceedings.”  Osherow, 200 F.3d at 388.  To resolve this question, “we
consider whether and to what extent [Nu-Way] had actual or imputed awareness” before
the confirmation hearing that Delp had caused funds to be withdrawn from his
IRA for the acquisition of the secured claim against Economy.  See id.

          Delp contends that the allegations
throughout the course of the parties’ litigation in state and federal court
show that “Nu-Way obviously distrusted Delp all along the way.”  Thus, Delp
contends in effect that Nu-Way should have known he might withdraw funds from
his IRA and should have conducted periodic examinations of Delp under
Bankruptcy Rule 2004(a) to determine whether he was engaging in such conduct.

          Delp filed his bankruptcy schedules in
November 1991.  The creditors’ meeting was conducted in December 1991, and
thus, the deadline for filing objections to the claimed exemptions listed in
Delp’s bankruptcy schedules was in January 1992.  See Fed. R. Bankr. P. 4003(b).  Delp did
not acquire the secured claim against Economy until December 1992.  The
bankruptcy court signed an order confirming a plan of reorganization in April
1993.  The first indication in the record that Nu-Way had some knowledge that
Delp may have been involved in a transaction regarding the secured claim
against Economy is a deposition subpoena served on Delp’s son in September 1993
in connection with the adversary proceeding.  Delp’s son responded by seeking a
protective order from the bankruptcy court.  When a similar subpoena was served
on Delp’s attorney, the attorney filed a motion for protective order, as did
Delp and his wife.  A federal magistrate ordered discovery of the documents
sought in January 1994.

          Nu-Way contends that it could not have
challenged the propriety of the acquisition of the secured claim against
Economy before entry of the confirmation order because it did not learn of the
acquisition until afterward.  The record supports Nu-Way’s contention, and Delp
does not point to any contrary evidence in the record nor otherwise contradict Nu-Way’s
assertion that it did not learn of the acquisition until after entry of the
confirmation order.

          There is nothing in the record to
indicate that Nu-Way “had actual or imputed awareness” before the confirmation
hearing that Delp had caused funds to be withdrawn from his IRA for the
acquisition of the secured claim against Economy.  See Osherow, 200 F.3d
at 388.  Accordingly, the bankruptcy proceedings do not bar Nu-Way’s present
suit under the federal-law doctrine of res judicata.  Id.

          The trial court’s conclusion that
rendition of judgment in the Economy litigation bars Nu-Way’s claims is
governed by state law.  A claim of res judicata under Texas law consists of
three elements: (1) a final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a
second suit based on claims actually litigated in the first suit or claims
which should have been litigated in the first suit.  See State & County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001) (per
curiam); Nelson v. Williams, 135 S.W.3d 202, 206 (Tex. App.—Waco 2004,
pet. denied); Steger v. Muenster Drilling Co., 134 S.W.3d 359, 368 (Tex. App.—Fort Worth 2003, pet. denied).

          The Supreme Court has adopted a
transactional approach to determine whether a particular claim should have been
pursued in prior litigation.  See State & County Mut. Fire Ins. Co., 52 S.W.3d at 696; Sanders v. Blockbuster, Inc., 127 S.W.3d 382,
386 (Tex. App.—Beaumont 2004, pet. denied); Compass Exploration, Inc. v. B-E
Drilling Co., 60 S.W.3d 273, 278 (Tex. App.—Waco 2001, no pet.).  This
approach “provides that a final judgment on an action extinguishes the right to
bring suit on the transaction, or series of connected transactions, out of
which the action arose.”  Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627, 631 (Tex. 1992) (citing Restatement (Second) of Judgments § 24(1) (1982)).  This
determination “requires an analysis of the factual matters that make up the
gist of the complaint, without regard to the form of action.”  Id. at 630; accord Loy v. Harter, 128 S.W.3d 397, 406 (Tex. App.—Texarkana 2004,
pet. denied); Kothmann v. Cook, 113 S.W.3d 471, 474-75 (Tex.
App.—Amarillo 2003, no pet.).

          What factual grouping constitutes a “transaction,” and what
groupings constitute a “series,” are to be determined pragmatically, giving
weight to such considerations as whether the facts are related in time, space,
origin, or motivation, whether they form a convenient trial unit, and whether
their treatment as a unit conforms to the parties’ expectations or business
understanding or usage.

 

Restatement (Second) of
Judgments § 24(2) (1982) (quoted by
Barr, 837 S.W.2d at 631); accord Sanders, 127 S.W.3d at 386;
Compass Exploration, 60 S.W.3d at 278.

          A review of the jury charge in the
Economy suit reveals that the following matters were at issue in that
litigation: (1) whether Delp breached his fiduciary duty as Economy’s president
and director by acquiring the secured claim from FFRE or by causing the
unsecured debt to be assigned to his son’s company; (2) whether any negligence
on Delp’s part in connection with these transactions was a proximate cause of
damages to Economy; (3) whether Delp committed fraud against Economy; (4)
whether Economy had waived its claims; and (5) whether Delp and/or the Delp IRA
acquired ownership of the FFP units from FFRE or a security interest in those
units.[4]

          Conversely, Nu-Way’s suit against Delp
seeks turnover of the Economy judgment or garnishment of its proceeds, or in
the alternative, turnover of sufficient funds in the IRA to satisfy Nu-Way’s
judgment.  Nu-Way also seeks declaratory relief in the form of a judgment
declaring that Delp’s use of funds from his IRA to purchase the secured claim
caused his entire IRA to lose its exempt status under federal law or,
alternatively, caused the judgment itself to lose its exempt status
notwithstanding its being held by the Delp IRA.

          The claims in both lawsuits revolve
around the transaction in which the Delp IRA obtained the secured claim against
Economy.  The Economy suit focused on whether Delp’s conduct in this
transaction violated any legal obligations owed to Economy.  Conversely, Nu-Way’s
suit focuses on whether Delp’s use of funds from his IRA to obtain the secured
claim and release caused his IRA or at least the Economy judgment to
lose its exempt status.

          Applying the pragmatic approach
adopted by the Supreme Court in Barr, we conclude that Nu-Way’s claims
are not claims which should have been litigated in the Economy suit for
purposes of res judicata.  Although the facts of both suits are “related in
time [and] origin,” they are not “related” by the “motivation” of the
respective plaintiffs.  See Barr, 837 S.W.2d at 631; Sanders, 127
S.W.3d at 386; Compass Exploration, 60 S.W.3d at 278; Restatement (Second) of Judgments § 24(2). 


          Economy had no motivation to litigate
the issue of whether Delp’s use of funds from his IRA to purchase the secured
claim and release rendered his IRA or part of it no longer exempt under federal
law.  Conversely, Nu-Way has no motivation to litigate the issue of whether
Delp’s conduct in purchasing the secured claim violated any fiduciary duties he
owed Economy or otherwise caused Economy to suffer compensable injury.  See Heard
v. Moore, 101 S.W.3d 726, 729 (Tex. App.—Texarkana 2003, pet. denied)
(plaintiff’s suit against defendants not barred by res judicata even though
defendants as third-party plaintiffs obtained default judgment against
third-party defendant in same suit for contribution and indemnity because plaintiff
“was procedurally neutral” as to the claim against the third-party defendant
and had no obligation “to inject herself” into that dispute); In re J.G.W.,
54 S.W.3d 826, 833 (Tex. App.—Texarkana 2001, no pet.) (father’s claims against
ex-wife and her new husband for intentional infliction of emotional distress,
interference with child custody, and civil conspiracy which could have been
litigated in prior suit to modify custody and support provisions of divorce
decree not barred by res judicata because these claims “would only be
ancillary” to the modification proceeding); Cain v. Cain, 746 S.W.2d 861,
863 (Tex. App.—El Paso 1988, writ denied) (former wife’s turnover action for
husband’s retirement payments not barred by res judicata even though she did not
seek turnover relief in prior suit to enforce divorce decree).

Collateral Estoppel

          Under both federal and state law, a
claim of collateral estoppel has three elements: “(1) the facts sought to be
litigated in the second action were fully and fairly litigated in the first
action; (2) those facts were essential to the judgment in the first action; and
(3) the parties were cast as adversaries in the first action.”   Kenedy
Mem’l Found., 90 S.W.3d at 288 (quoting Sysco Food Servs., Inc. v.
Trapnell, 890 S.W.2d 796, 801 (Tex. 1994)); accord Fiallos v.
Pagan-Lewis Motors, Inc., 147 S.W.3d 578, 584 (Tex. App.—Corpus Christi 2004,
pet. denied).

          Collateral estoppel is more narrow
than res judicata because it precludes only the relitigation of issues which
were actually litigated in a prior suit.  Van Dyke v. Boswell, O’Toole,
Davis & Pickering, 697 S.W.2d 381, 384 (Tex. 1985); Fiallos, 147
S.W.3d at 584; Tex. Capital Sec. Mgmt., Inc. v. Sandefer, 80 S.W.3d 260,
264 (Tex. App.—Texarkana 2002, no pet.); McRae Exploration & Prod., Inc.
v. Reserve Petroleum Co., 962 S.W.2d 676,
680 (Tex. App.—Waco 1998, pet. denied).  “Thus, unlike the broader res
judicata doctrine, collateral estoppel analysis does not focus on what could
have been litigated, but only on what was actually litigated and essential to
the judgment.”  Van Dyke, 697 S.W.2d at 384; Tex. Capital Sec. Mgmt.,
80 S.W.3d at 264; accord McRae Exploration, 962 S.W.2d at 680.  Whether
collateral estoppel applies to a particular judgment is a question of law.  McRae
Exploration, 962 S.W.2d at 680.

          Here, as demonstrated in the
discussion regarding Delp’s state-law res judicata claim, the Economy
litigation and the Nu-Way litigation involve different issues.  True, the
Economy litigation resolved the issue of whether Delp or the Delp IRA “owns”
the secured claim against Economy.  However, this is not legally relevant to Nu-Way’s
claims in the present suit because turnover relief is available to reach
property in the judgment debtor’s possession or property subject to his
control.  See Tex. Civ. Prac.
& Rem. Code Ann. § 31.002(b)(1) (Vernon Supp. 2006); Gerdes v.
Kennamer, 155 S.W.3d 541, 546 (Tex. App.—Corpus Christi 2004, no pet.); Bay
City Plastics, Inc. v. McEntire, 106 S.W.3d 321, 325 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).  Therefore, because the Economy litigation
and the Nu-Way litigation involve different issues, it cannot be said that Nu-Way’s
suit is barred by collateral estoppel.

Waiver

          The trial court also concluded that Nu-Way
waived its right to challenge the exempt status of the Delp IRA because Nu-Way
did not file an objection to Delp’s bankruptcy schedule identifying the IRA as
exempt.  As indicated above however, Nu-Way had no basis to raise such an
objection until after the time for filing objections had passed.  See Fed. R. Bankr. P. 4003(b).  Therefore,
the court erred by concluding that Nu-Way had waived its right to challenge the
exempt status of the IRA.

          Accordingly, we sustain Nu-Way’s third
issue in part and Nu-Way’s fourth issue in its entirety.

Exempt Status of IRA Under Bankruptcy Plan

          Nu-Way also contends in its third
issue that the bankruptcy plan “does not preclude Nu-Way from collecting its
judgment against any currently non-exempt asset, even if such asset is
traceable to proceeds of the IRA.”  Nu-Way contends in its fifth issue that the
court erred by concluding that no asset traceable to the [Delp] IRA . . . will
ever be available to satisfy Nu-Way’s judgment.”

          In particular, the trial court
concluded that the bankruptcy plan is “a binding and enforceable contract” and
thus the identification of the Delp IRA in the plan as an exempt asset means “Nu-Way
cannot . . . raid [the] Delp IRA for satisfaction of its prepetition claims
against Delp.”  Thus, the court concluded that Nu-Way breached this “contract”
by attempting to enforce its lien against an asset held in the name of the Delp
IRA.

          Under section 522(b) of the Bankruptcy
Code, a debtor may choose to withdraw certain property from his bankruptcy
estate using exemptions provided by either state or federal law, unless the
debtor’s state “opts out” of the federal exemptions.  See 11 U.S.C.A. § 522(b)
(West Supp. 2006); Owen v. Owen, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835, 114 L. Ed. 2d. 350 (1991).  “Texas is part of a decided minority of
states that have not opted out.”  In re Brown, 299 B.R. 425, 427 (Bankr.
N.D. Tex. 2003).[5]

          Here, Delp chose to claim the
exemptions provided by Texas law.  Thus, he identified the Delp IRA as an
exempt asset under section 42.0021(a) of the Property Code.  The version of section
42.0021(a) in effect at the time of Delp’s bankrtupcy provided:

          In addition to the exemption
prescribed by Section 42.001, a person’s right to the assets held in or to
receive payments, whether vested or not, under any stock bonus, pension,
profit-sharing, or similar plan, including a retirement plan for self-employed
individuals, and under any annuity or similar contract purchased with assets
distributed from that type of plan, and under any retirement annuity or account
described by Section 403(b) of the Internal Revenue Code of 1986, and under any
individual retirement account or any individual retirement annuity, including a
simplified employee pension plan, is exempt from attachment, execution, and
seizure for the satisfaction of debts unless the plan, contract, or account
does not qualify under the applicable provisions of the Internal Revenue Code
of 1986.  A person’s right to the assets held in or to receive payments,
whether vested or not, under a government or church plan or contract is also
exempt unless the plan or contract does not qualify under the definition of a
government or church plan under the applicable provisions of the federal
Employee Retirement Income Security Act of 1974.  If this subsection is held
invalid or preempted by federal law in whole or in part or in certain
circumstances, the subsection remains in effect in all other respects to the
maximum extent permitted by law.

 

Act of May 27, 1989, 71st Leg., R.S., ch. 1122,
§ 1, 1989 Tex. Gen. Laws 4627, 4627-28 (amended 1995) (current version at Tex. Prop. Code Ann. § 42.0021(a) (Vernon Supp. 2006)) (hereinafter, “section 42.0021”).

          Thus, under the law then in effect,
Delp claimed an exemption for “the assets held in . . . [an] individual retirement
account.”  See id.  At that time, “the assets held” in the Delp IRA
consisted of funds in the amount of $1,118,138.

          Under section 522(c) of the Bankruptcy
Code, such funds are “not liable during or after the case for any [prebankruptcy]
debt” with certain exceptions not applicable here.  Id. § 522(c) (West 2004
& Supp. 2006); see S & C Home Loans, Inc. v. Farr (In re
Farr), 278 B.R. 171, 176-77 (B.A.P. 9th Cir. 2002); In re Hyde, 334
B.R. 506, 513 (Bankr. D. Mass. 2005); Lowe v. Yochem (In re Reed), 184
B.R. 733, 738 (Bankr. W.D. Tex. 1995).  “The legislative history of this
section also shows that it was enacted to insulate exempt property from any
nondischargeable prepetition debts which are not listed as exceptions.”  S
& C Home Loans, 278 B.R. at 177.

          The issue here is whether any portion
of the funds in the Delp IRA lost their exempt status under the Bankruptcy Code
because funds from that account were used to acquire the secured claim against
Economy and the release of Delp’s personal guaranty.  It is undisputed that the
secured claim would not have been an exempt asset if Delp had acquired it
before filing the bankruptcy petition.  See Leibman v. Grand, 981 S.W.2d
426, 435 (Tex. App.—El Paso 1998, no pet.) (Texas law does “not provide an
exemption for currency, checks, or negotiable instruments”).

          Section 42.0021(c) formerly provided:

            Amounts
distributed from a plan or contract entitled to the exemption under Subsection
(a) are not subject to seizure for a creditor’s claim for 60 days after the
date of distribution if the amounts qualify as a nontaxable rollover
contribution under Section 402(a)(5), 403(a)(4), 403(b)(8), or 408(d)(3) of the
Internal Revenue Code of 1986.

 

Act of May 27, 1989, 71st Leg., R.S., ch. 1122,
§ 1, 1989 Tex. Gen. Laws 4627, 4628 (amended 1995) (current version at Tex. Prop. Code Ann. § 42.0021(c) (Vernon Supp. 2006)).

          $250,000 was withdrawn from the Delp
IRA to acquire the secured claim and release.  These proceeds would remain
exempt under section 42.0021(c) if they were used as a rollover contribution
for another qualifying account.  See id.  However, they were not. 
Rather, the proceeds were used to purchase a non-exempt asset.  See Leibman,
981 S.W.2d at 435.

          Delp cites Lowe for the
proposition “that a postpetition change in the character of property properly
claimed as exempt will not change the status of that property, relying
on the principle that once property is exempt, it is exempt forever and nothing
occurring postpetition can change that fact.”  Lowe, 184 B.R. at 737. 
We fully agree, insofar as this proposition goes.  But the true meaning of this
statement is that “[p]roperty which is claimed as exempt is deemed no longer
property of the [bankruptcy] estate, and its subsequent transformation into
proceeds which would be nonexempt under state law does not bring these proceeds
back into the bankruptcy estate.”  In re Walston, 190 B.R. 855, 859
(Bankr. S.D. Ill. 1996); see also Lowe, 184 B.R. at 738 (“The practical
implication is that such property is forever protected from the claims of
pre-petition creditors, and is essentially removed from the bankruptcy
process.”).

          With this understanding, the
application of this principle in cases like Delp’s can be readily seen.  For
example, in S & C Home Loans, the debtor had claimed the $100,000
homestead exemption allowed by California law.  278 B.R. at 173.  S & C
Home Loans obtained a nondischargeable judgment against the debtor for fraud. 
S & C sought to satisfy its judgment lien against the nonexempt equity in
the debtor’s residence, which was shown to have a fair market value
significantly in excess of the combined value of the exemption and the mortgage
lien secured by the residence.  Id. at 173-74.  The bankruptcy appellate
panel held that S & C’s judgment lien could reach all but the exempt
portion of the debtor’s interest in the homestead.  Id. at 181.

          In a case with similar facts, a Massachusetts bankruptcy court likewise held that the holder of a nondischargeable claim
against the debtor could enforce its rights against the debtor’s homestead to
the extent “the Debtor had equity in the Property over and above the amount of
his claimed exemption and any non-avoidable liens.”  Hyde, 334 B.R. at
513.

          Conversely, in Lowe and similar
cases, the bankruptcy trustee sought to bring into the bankruptcy estate assets
which were exempt when the bankruptcy petition was filed but which had been converted
into nonexempt assets.

          In Lowe, the debtor sold his
exempt homestead (a ranch) for cash and a note during the pendency of his
bankruptcy.  After discharge, the trustee brought an adversary proceeding
alleging that the note had become property of the bankruptcy estate after six
months because it was a part of the proceeds from the sale of the homestead.  See
Lowe, 184 B.R. at 735; see also Tex.
Prop. Code Ann. § 41.001(c) (Vernon Supp. 2006) (proceeds from sale of
homestead are exempt for six months after sale).  The bankruptcy judge rejected
this assertion:

Nothing in section
522(c) even vaguely suggests that, as a precondition to enjoying the
protections of that provision, the debtor must maintain the exempt character of
the property.  If the debtor decides, as part of his fresh start, to sell the
house, buy a Winnebago, and travel around the country from campground to campground
with his wife and his dog, the statute appears to place no impediment in his
path.  True enough, the Winnebago may not be exempt from obligations he incurs
after his discharge (depending on state law), but it should not be vulnerable
to the satisfaction of any of the debtor’s prepetition obligations.  Were the
rule otherwise, then estates could be reopened to administer such proceeds at
virtually any time, robbing bankruptcy administration of any sort of meaningful
finality, and robbing the bankruptcy discharge of its efficacy.

 

            We join the majority of courts that have ruled
on this issue, concluding that a postpetition transformation of exempt property
into a form of property which would not be exempt under state law does not
return the property to the estate.

 

Lowe,
184 B.R. at 738; accord In re Konnoff, 341 B.R. 28, 32 (Bankr. D. Ariz. 2006); Walston, 190 B.R. at 859.

          However, the bankruptcy judge in each
of these cases explicitly noted that, even though these proceeds could not be
reached by the bankruptcy trustee, the proceeds were not exempt from
postpetition creditors.  See Konnoff, 341 B.R. at 32 n.23; Walston,
190 B.R. at 859; Lowe, 184 B.R. at 738 n.7.  For our purposes, a
prepetition creditor holding a nondischargeable judgment lien has the same
right to attach non-exempt assets acquired by a debtor after discharge as a
postpetition creditor.  See S & C Home Loans, 278 B.R. at 181; Hyde,
334 B.R. at 513.

          Therefore, we hold that the trial
court erred by concluding that Nu-Way’s judgment lien did not attach to the
secured claim against Economy because of its acquisition with funds from the
Delp IRA.  Accordingly, we sustain the remainder of Nu-Way’s third issue and
the entirety of its fifth issue.

Exempt Status of IRA Under Internal Revenue Code

          Nu-Way contends in its first and
second issues respectively that the court erred by refusing to find that the
Delp IRA lost its exempt status because the use of funds from that account to
acquire the secured claim and release is a prohibited transaction under the
Internal Revenue Code and because the Economy judgment was not reported to the
Internal Revenue Service.

          Under section 408(e)(2)(A) of the
Internal Revenue Code, an IRA “ceases to be an individual retirement account”
if the account holder “engages in any transaction prohibited by section 4975.” 
26 U.S.C.A. § 408(e)(2)(A) (West Supp. 2006).  Thus, an IRA loses its status as
exempt property in a bankruptcy proceeding if the account holder engages in a
prohibited transaction under section 4975.  See In re Hughes, 293 B.R.
528, 530 (Bankr. M.D. Fla. 2003).

          Nu-Way contends that Delp’s use of
funds from the IRA for the acquisition of the secured claim and release
constituted a “prohibited transaction” under several provisions of section 4975:
(1) the “lending of money or other extension of credit between [the IRA] and a
disqualified person”; id. § 4975(c)(1)(B) (West Supp. 2006); (2) the “use
by or for the benefit of a disqualified person of the income or assets of [the
IRA]”; see id. § 4975(c)(1)(D) (West Supp. 2006); and (3) the use of
“the income or assets of [the IRA] in [Delp’s] own interest or for his own
account.”  Id. § 4975(c)(1)(E) (West Supp. 2006).

          Under subdivision (c)(1)(D), the
parties dispute whether Delp received a “benefit” from the FFRE transaction. 
To recap the facts, $250,000 was paid from the Delp IRA to FFRE at Delp’s
direction.  In return, First Financial assigned the secured claim against
Economy to the IRA and released Delp from the personal guaranty he had
previously given for the Economy debt.

          Delp contends primarily that he
received no “benefit” from the release because his guaranty was then worthless
(as evidenced by his bankruptcy).  We disagree.

          A guaranty agreement “creates a
secondary obligation whereby the guarantor promises to answer for the debt of
another and may be called upon to perform once the primary obligor has failed
to perform.”  Republic Nat’l Bank v. Nw. Nat’l Bank, 578 S.W.2d 109, 114
(Tex. 1978); accord Garner v. Corpus Christi Nat’l Bank, 944 S.W.2d 469,
475 (Tex. App.—Corpus Christi 1997, writ denied); Gooch v. Am. Sling Co.,
902 S.W.2d 181, 185 (Tex. App.—Fort Worth 1995, no writ).  In bankruptcy
proceedings, a debtor’s guaranty is treated as a contingent debt.  See In re
Pennypacker, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990); Craig Corp. v.
Albano (In re Albano), 55 B.R. 363, 366 (Bankr. N.D. Ill. 1985); Guar.
Bank v. Lone Star Life Ins. Co., 568 S.W.2d 431, 433 (Tex. Civ. App.—Dallas
1978, writ ref’d n.r.e.).

          It has been held in bankruptcy
proceedings that a guarantor “derives measurable economic benefit from a
payment on the guaranteed debt, to the extent the [guarantor’s] contingent
liability on the personal guaranty is reduced.”  Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs., Inc.), 980 F.2d 792, 797
(1st Cir. 1992).  If a mere reduction in a guarantor’s contingent liability
constitutes a benefit to the guarantor, then a complete release from liability
on a guaranty is likewise a benefit to the guarantor.

          The fact that Delp was insolvent at
the time of the release is irrelevant.  See Meridith Millard Partners v.
Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners), 12 F.3d
1549, 1555-56 (10th Cir. 1993).  Whether he received a benefit from the release
must be determined as of the date of the release.  Id.  At the time of
the release (i.e., before confirmation of the bankruptcy plan), Delp
remained liable on the guaranty.  Thus, he received a benefit from the
release.  Id.

          Therefore, because funds from Delp’s
IRA were used for his benefit, this was a prohibited transaction under section
4975(c)(1)(D).  See O’Malley v. Commissioner, 972 F.2d 150, 153 (7th
Cir. 1992) (payment of disqualified person’s legal fees by pension fund was
prohibited transaction);[6] Rollins
v. Commissioner, 88 T.C.M. (CCH) 447, 2004 Tax Ct. Memo. LEXIS 272, at *31
(T.C. 2004) (disqualified person committed prohibited transaction where he “sat
on both sides of the table”); Harris v. Commissioner, 67 T.C.M. (CCH)
1983, 1994 Tax. Ct. Memo LEXIS 31, at *4 (T.C. 1994) (owners of IRA committed
prohibited transaction by using funds from IRA to purchase personal residence).

          Because Delp engaged in a prohibited
transaction in December 1992, his IRA “cease[d] to be an individual retirement
account as of the first day of such taxable year.”  26 U.S.C.A. § 408(e)(2)(A). 
Under section 42.0021(a), an IRA “is exempt from attachment, execution, and
seizure for the satisfaction of debts unless the . . . account does not qualify
under the applicable provisions of the Internal Revenue Code of 1986.”  Act of
May 27, 1989, 71st Leg., R.S., ch. 1122, § 1, 1989 Tex. Gen. Laws at 4627-28
(amended 1995).  Accordingly, because the Delp IRA no longer qualifies as an
individual retirement account under the Internal Revenue Code, it is no longer
exempt from creditors under section 42.0021.  See Jones v. Am. Airlines,
Inc., 131 S.W.3d 261, 270 (Tex. App.—Fort Worth 2004, no pet.).

          As we have already explained, when an
asset which was exempt during a bankruptcy proceeding loses its exempt status,
the holder of a nondischargeable claim may seek to enforce that claim against
the previously exempt asset.  See S & C Home Loans, 278 B.R. at 181;
Hyde, 334 B.R. at 513.  For these reasons, we sustain Nu-Way’s first and
second issues.

Turnover Relief

          Nu-Way contends in its seventh issue
that the court abused its discretion by denying its request for turnover of the
funds in the Delp IRA.

          We have determined that the entirety
of the funds in the Delp IRA are not exempt from creditors.  Section 31.002(a)(2)
of the Civil Practice and Remedies Code provides that a “judgment creditor is
entitled” to turnover relief for property that “is not exempt from attachment,
execution, or seizure for the satisfaction of liabilities.”  Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a)(2)
(Vernon Supp. 2006).

          A creditor may obtain turnover relief
for “property that is in the debtor’s possession or is subject to the debtor’s
control.”  Id. § 31.002(b)(1); see also Gerdes, 155 S.W.3d at
546; Bay City Plastics, 106 S.W.3d at 325.  The parties have stipulated
that the Delp IRA “is and has always been self-directed.”  Thus, the IRA is
subject to Delp’s control.

          Therefore, because the entirety of the
funds in the Delp IRA are non-exempt and because the IRA is subject to Delp’s
control, the court abused its discretion by denying Nu-Way’s request for
turnover relief.  Accordingly, we sustain Nu-Way’s seventh issue.




Attorney’s Fees

          Nu-Way contends in its eighth issue
that the court erred by awarding attorney’s fees to Delp.  Nu-Way contends in
its ninth issue that the court erred by directing Nu-Way to pay Delp’s
attorney’s fees directly to his attorneys.  Nu-Way contends in its tenth issue
that the court erred by failing to offset the attorney’s fee award and credit
those sums toward Nu-Way’s judgment against Delp.

          The trial court awarded attorney’s
fees to Delp after finding that Nu-Way committed a breach of contract (namely,
by seeking to collect against the Delp IRA).  In the alternative, the trial
court awarded attorney’s fees under the Declaratory Judgments Act.

          We have determined that the Delp IRA
is not exempt from creditors.  Therefore, Nu-Way did not “breach” the
bankruptcy plan by seeking to enforce its judgment against assets held in the
IRA, and Delp is not entitled to attorney’s fees under a breach-of-contract
theory.  See Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (party must prevail on contract claim to recover attorney’s fees); Flagship
Hotel, Ltd. v. City of Galveston, 117 S.W.3d 552, 564 (Tex. App.—Texarkana
2003, pet. denied) (same); see also Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997) (providing for
award of attorney’s fees in suit on contract).

          However, a party need not prevail on a
claim for declaratory relief to recover attorney’s fees.  See Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996); Apex
Fin. Corp. v. Garza, 155 S.W.3d 230, 238 (Tex. App.—Dallas 2004, pet.
denied); Nat’l Café Servs., Ltd. v. Podaras, 148 S.W.3d 194, 198 (Tex.
App.—Waco 2004, pet. denied).  Nevertheless, because we have concluded that
Delp should not prevail on the merits, we will remand this cause to the trial
court to reconsider the attorney’s fee award.  See Nat’l Café Servs.,
148 S.W.3d at 198.  Thus, we sustain Nu-Way’s eighth issue.

          Even though we will remand for
reconsideration of the attorney’s fee award, we also address the remaining
issues because they are likely to arise on remand.  See Edinburg
Hosp. Auth. v. Trevino, 941 S.W.2d 76, 81 (Tex.1997); Sheshtawy v.
Sheshtawy, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied); In
re J.B., 93 S.W.3d 609, 617 (Tex. App.—Waco 2002, pet. denied).

          The trial court purportedly followed
federal law by directing Nu-Way to pay the attorney’s fee award directly to
Delp’s attorneys.  However, the attorney’s fee award is governed solely by
state law.  Texas courts have consistently condemned the award of attorney’s
fees directly to counsel.  See, e.g., Fort Bend County v. Martin-Simon, 177
S.W.3d 479, 486 (Tex. App.—Houston [1st Dist.] 2005, no pet.); Graco, Inc.
v. CRC, Inc. of Tex., 47 S.W.3d 742, 746-47 (Tex. App.—Dallas 2001, pet.
denied); Transp. Ins. Co. v. Franco, 821 S.W.2d 751, 755 (Tex.
App.—Amarillo 1992, writ denied).  

          Nevertheless, it has also been held
that a party who has been ordered to pay attorney’s fees in this manner does
not have standing to challenge this aspect of the attorney’s fee award.  See
Martin-Simon, 177 S.W.3d at 486; Transp. Ins. Co., 821 S.W.2d at
755.  This is because it is usually “immaterial” to the party paying the
attorney’s fee award how those fees are handled by the prevailing party.  See
Transp. Ins. Co., 821 S.W.2d at 755.  Here however, because Nu-Way is a
judgment creditor of Delp, the manner in which the attorney’s fee award is
handled is a matter of legitimate concern to Nu-Way.  Thus, we conclude that Nu-Way
has standing to challenge the manner in which the trial court ordered that the
attorney’s fees be paid.  Cf. Fort Bend County, 177 S.W.3d at
486; Transp. Ins. Co., 821 S.W.2d at 755.

          The court erred when it ordered Nu-Way
to pay Delp’s attorney’s fees directly to his attorneys.  See Martin-Simon,
177 S.W.3d at 486; Graco, 47 S.W.3d at 746-47; Transp. Ins. Co.,
821 S.W.2d at 755.  Accordingly, we sustain Nu-Way’s ninth issue.

          A set-off is required when parties
hold mutual judgments against each other.  See Bonham State Bank v. Beadle,
907 S.W.2d 465, 468 (Tex. 1995); Beutel v. Dallas County Flood Control Dist.,
916 S.W.2d 685, 693 (Tex. App.—Waco 1996, writ denied); Building Concepts,
Inc. v. Duncan, 667 S.W.2d 897, 902-03 (Tex. App.—Houston [14th Dist.]
1984, writ ref’d n.r.e.)  Here, the parties have stipulated that Nu-Way holds a
valid, unpaid judgment against Delp.  Thus, the court erred by denying Nu-Way’s
request that its judgment against Delp be set off against the attorney’s fees
awarded in Delp’s favor.  See Building Concepts, 667
S.W.2d at 902-03.  Accordingly, we sustain Nu-Way’s tenth issue.

Conclusion

The court erred by rendering judgment in Delp’s
favor for breach of contract and by rendering judgment that Nu-Way take nothing
on its claims.  The court also erred by ordering Nu-Way to pay Delp’s
attorney’s fees directly to his attorney and by denying Nu-Way’s request that its judgment against Delp be set
off against the attorney’s fees awarded in Delp’s favor.  Accordingly, we
reverse the judgment and remand this cause to the trial court for further
proceedings consistent with this opinion.

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

Reversed and remanded

Opinion delivered and
filed September 6, 2006

[CV06]









[1]
          Both the unsecured debt and the
secured claim arose from Economy’s own bankruptcy.  These claims originated
with the $1.6 million note.  This note was secured by the 175,000 FFP units and
was further supported by the personal guarantees of Delp and of John Harvison,
who is an officer and director of Nu-Way and Economy.  The bankruptcy court
divided this note into the $350,000 secured claim and a $1.3 million unsecured
debt.  The Economy bankruptcy plan called for the $1.3 million debt to be
halved.  Hence, Economy executed the $660,567 note in favor of FAMCO.





[2]
          Although the assignment was to
Bank One, First Financial’s endorsement on the original $1.6 million makes the
note payable to Delp in his individual capacity.





[3]
          For example, in Conclusion of
Law No. 76, the court recites:

 

            The turnover relief requested
may not be granted either.  It is Delp IRA that has the claim against the
assets in the Economy registry.  Delp IRA is a juridically distinct
entity from Delp.  Therefore, its rights as a judgment claimant in the Economy
case cannot be adjudicated here, certainly not without its joinder in this
litigation.





[4]
          The jury found against Economy
on its claims and determined that Delp and/or the Delp IRA acquired ownership
of the FFP units rather than a security interest in those units.  The trial
court rendered judgment notwithstanding the verdict on this latter issue,
stating in Conclusion of Law No. 69 “that the Delp IRA owns a secured claim for
$350,000, with the FFP Units . . . pledged as collateral.”





[5]
          If the debtor’s state “opts
out,” then the debtor is limited to the exemptions provided by state law.  See
Owen v. Owen, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835, 114 L. Ed. 2d.
350 (1991).





[6]
          The trial court recites in
Conclusion of Law No. 96, “The documentary evidence before the Court
demonstrates Delp’s invasion of the IRA corpus to defend against his IRA’s
assets being taken from him.”  This too appears to constitute a prohibited
transaction, though Nu-Way does not contend that it is.  See O’Malley v.
Commissioner, 972 F.2d 150, 153 (7th Cir. 1992).